UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   ECF CASE

CHRISTINE PEDDY,

                              Plaintiff,          **COMPLAINT AND JURY DEMAND**

   v.

L'OREAL USA INC.
                              Defendant.
------------------------------------------------------------------X

The Plaintiff, by her attorneys, Law Offices of Lauren Goldberg, PLLC, as and for her complaint against the Defendant alleges:

## NATURE OF CLAIMS

1. Plaintiff was employed as an assistant Vice President of Marketing and brings this action for age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (ADEA), the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

2. The Court has jurisdiction over each of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's rights under 29 U.S.C. § 621 et seq. This Court has supplemental jurisdiction over plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Venue against all defendants lies in this judicial district pursuant to 28 U.S.C. § 1391(b) as this action arose, in substantial part, within the Southern District of New York, where the unlawful practices alleged herein occurred.

1

## PROCEDURAL REQUIREMENTS

4. Ms. Peddy filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. and received a Right to Sue Letter dated July 10, 2018.

## PARTIES

5. Plaintiff Christine Peddy is domiciled in New York, New York and at all relevant times was over the age of 40.

6. L'Oreal USA Inc. ("L'Oreal") is a French global company with its American headquarters located at 10 Hudson Yards, New York New York 10001. L'Oreal has over 200 employees in the United States.

7. L'Oreal is an "employer" within the meaning of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. and the New York Executive Law § 29, and the New York City Administrative Code, § 8-102.

## STATEMENT OF FACTS

8. Christine Peddy began working for L'Oreal USA Inc. ("L'Oreal") in May 2015 as an Assistant Vice President of Marketing.

9. Ms. Peddy's work performance at all times was excellent.

10. On December 17, 2015, Ms. Peddy had an exceeds rating performance review and was given a pro-rated $24,000 bonus and +1.9% base pay raise.

11. On February 22, 2016, she filled out a questionnaire distributed by L'Oreal wherein she mentioned that L'Oreal created a hostile work environment for older employees. She gave feedback on how her manager intentionally harassed her because she was older.

12. A short time later, on April 14, 2016, Ms. Peddy was informed by her manager that her position was being eliminated.

13. She was the only one in her department who was terminated at the time, and her manager had her escorted out of the building by security.

14. Upon information and belief, Ms. Peddy's job was not eliminated. In fact, upon information and belief, it was filled by a woman in her 30s.

15. Ms. Peddy was terminated because she had complained about the negative treatment toward older employees.

16. Surprised, Ms. Peddy challenged the circumstances surrounding her termination and she was reinstated on June 14, 2016 by Ms. Sarah Hibberson, the Head of L'Oreal HR USA at the time with no break in service. The Professional Products Division HR was told to correct the situation and create a new position for her at the same level and pay.

17. At the time of her reinstatement, Ms. Hibberson discussed Ms. Peddy's comments on the questionnaire and specifically her comments regarding older employees at an in-person meeting. She apologized and said that L'Oreal does not operate this way.

18. Upon reinstating the Plaintiff, Ms. Hibberson emphasized and confirmed that if any employee's position is impacted within the company, it is company policy that the employee be transferred into another role if at all possible.

19. Ms. Peddy was reinstated as the AVP- Assistant Vice President, of Marketing on the L'Oreal Professionnel team.

20. In December 2016, Ms. Peddy had a great performance review and was again given a bonus of $32,000 and 1.9% base pay increase.

21. In June 2017, Ms. Peddy was responsible for launching the first US "Hair Fashion Night" consumer event for the company.

22. It was a huge event for L'Oreal, as it was the first time the US participated in this global event and consumers could experience the L'Oreal Professionnel luxury brand. The event grew the Tecni.Art styling business +2.3% across salons and +19% in stores for the company.

23. Ms. Peddy was praised for her great work and the event was considered a significant success. It was even labeled as a "Best In Class."

24. In August 2017, Ms. Peddy was invited to speak at the Town Hall which was hosted by the President of the Division, David Greenberg, regarding the great success of Hair Fashion Night. She also put together the 2018 Hair Fashion Week strategic plan and was asked to present it to Antonio Ramirez-Rumbo, the Brand President, and it was praised and approved.

25. Ms. Peddy was commended for her work. As a result of her success with the Tecni.Art business, she was then asked to lead the Digital Screen roll-out to top salon customers and was asked to put together a presentation to be shared globally.

26. Upon information and belief, Ms. Hibberson left L'Oreal in or around the beginning of 2017 and was replaced by Stephane Charbonnier.

27. On September 13, 2017, Ms. Peddy again was asked to fill out a similar questionnaire to the one she had filled out in around March 2016 regarding work atmosphere at L'Oreal.

28. On this survey, she again reiterated her message that she felt the company was not supportive of older people in that they denied older employees the same opportunity to advance as they allowed younger employees to advance.

29. In or around October 2017, Lisa Morris, the General Manager, told the L'Oreal Professional team that she had taken time to read all the feedback in the surveys. She then discussed some of the points raised in the questionnaires.

30. After filling out the questionnaire, Ms. Peddy's Q3 check-in review was cancelled and never rescheduled.

31. The Q3 review was important and significant because in the Q3 review, the employee's annual goals were reviewed, and the employee was provided important feedback. As well, there was alignment on the priorities to be achieved for the next 90 days.

32. Ms. Peddy was at a disadvantage not having her review because there was no discussion around the goals she needed to achieve in order to obtain her final bonus. After filling out the questionnaire, Ms. Peddy was also left out of certain meetings that she had normally been a part of in the past.

33. Additionally, just a few weeks after filling out the questionnaire, Ms. Morris asked Ms. Peddy to put together a 2018 strategic Store Channel recommendation and complete all of the merchandising projects for the following year.

34. This was an usual request because this task would normally take place in Q1 2018 when budgets would be set.

35. Upon information and belief, Ms. Peddy was asked to complete this task knowing that Ms. Morris intended to terminate her shortly thereafter.

36. On November 14, 2017, similar to what occurred on April 14, 2016, Ms. Peddy was again terminated and told that her position was being eliminated.

37. Ms. Peddy's Q3 review was cancelled and her position was eliminated because she had complained about the treatment of older employees at L'Oreal.

38. Upon information and belief, PPD created a new position for a woman in her 20s and gave her the responsibilities that Plaintiff had handled.

39. In or around December 2017, although she had already been terminated, L'Oreal gave Ms. Peddy an optional bonus because of her work performance.

40. Ms. Peddy was the only AVP of Marketing terminated in the Professional Products Division.

41. Having displaced Ms. Peddy from her AVP position, L'Oreal treated her significantly different than younger employees who had been previously displaced from their jobs.

42. Although L'Oreal has a policy whereby they place employees who have been displaced from their positions within the company into other roles within the company if at all possible, L'Oreal did not exercise their own policy for Ms. Peddy because she is an older employee, over the age of 40.

43. L'Oreal has consistently assisted and placed younger employees, those younger than 40, who have been displaced from their positions within the company into other roles within the company.

44. For example, the company went to great lengths to transfer Laurie Lam, Zachary Tod Rosenkoetter, Kevin Shapiro, Alexander Murtha, and Christina Kennally, all of whom are in their 20s or 30s, into other positions within the company when their positions were eliminated or lost because they wanted to relocate to another country.

45. Upon information and belief, there are numerous other younger employees who have been transferred into different roles within L'Oreal after being displaced from their positions regardless of whether they had significant relevant experience for the role they were being transitioned into within L'Oreal.

46. In stark contrast, when Ms. Peddy tried to obtain a different position within L'Oreal upon having her position being eliminated, L'Oreal refused to help transition her even though there were open positions for which Ms. Peddy was well qualified.

47. Human resources did not assist Ms. Peddy in trying to obtain another position. There were two marketing roles within the L'Oreal Professionnel team that L'Oreal started to post and recruit for as open positions when Ms. Peddy was terminated. Ms. Peddy applied for both positions on her own but was never given any response.

48. In addition to the roles within Ms. Peddy's own division, the company was posting over 2000 open positions, 90 of which were within the New York Office.

49. Ms. Peddy internally and externally applied for 13 positions on her own, all of which she was well qualified to obtain.

50. Ms. Peddy was denied the opportunity to be considered for those positions because of her age and/or because she had made consistent complaints within L'Oreal about age discrimination.

51. Defendant's practices denied Ms. Peddy the same rights and privileges of those who were younger than Ms. Peddy.

52. As a result of L'Oreal's actions, she has suffered and continues to suffer emotional pain and mental anguish. Her career at L'Oreal and reputation within the Beauty Industry has been damaged.

53. As a result of L'Oreal's actions, she has suffered and continues to suffer from lost wages, benefits, bonuses and her pension plan.

54. L'Oreal subjected Ms. Peddy to disparate treatment and discrimination in the terms and conditions of her employment based on her age.

55. Ms. Peddy was terminated in retaliation for complaining about age discrimination.

56. Ms. Peddy was subjected to disparate treatment as younger displaced employees were being assisted and transferred to other positions within the company where L'Oreal refused to help Ms. Peddy transfer to another position after being terminated.

57. Plaintiff's position was eliminated because of her age and/or because she complained about age discrimination.

58. Defendants' actions and conduct were intentional and intended to hurt Christine Peddy.

59. Defendants' conduct has been malicious, willful, outrageous and conducted with full knowledge of the law. As such Plaintiff demands punitive damages against the Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION

**(Age Discrimination in Employment Act of 1967)**

60. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

61. The Age Discrimination Act of 1967  29 U.S.C. § 623(a)  provides that: "[i]t shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate again any individual with respect to his compensation, terms, conditions, or privileges of employment because, because of such individual' s age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age"

62. Defendants engaged in unlawful employment practices prohibited by the Age Discrimination Employment Act of 1967 by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her age and her opposition to the unlawful employment practices of Defendants.

63. As a direct and proximate result of these unlawful acts by Defendant, Ms. Peddy has suffered and continues to suffer lost wages, benefits and entitlements, damage to her career, pain and suffering, humiliation and emotional distress.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of The ADEA)

64. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.  The ADEA 29 U.S.C. § 623(d) states that "[i]t shall be unlawful for an employer to discriminate against any of his employees …because such individual …has opposed any practice made unlawful by this section."

65. Ms. Peddy was terminated in retaliation for asserting her rights under the ADEA.

66. As a direct and proximate result of these unlawful acts by Defendant, Ms. Peddy has suffered and continues to suffer lost wages, benefits and entitlements, damage to her career, pain and suffering, humiliation and emotional distress.

## AS AND FOR A THIRD CAUSE OF ACTION
### (For Discrimination under the New York State Human Rights Law)

67.  Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.  New York Human Rights Law §

296(1)(a) provides that "[i]t shall be an unlawful discriminatory practice (1) for an employer …because of an individual's age….refuse to hire or employer or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

68. As described above, the Defendant's actions are in violation of the New York State Human Rights Law.

69. As a direct and proximate result of these unlawful acts by Defendant, Ms. Peddy has suffered and continues to suffer lost wages, benefits and entitlements, damage to her career, pain and suffering, humiliation and emotional distress.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (For Retaliation under the New York State Human Rights Law)

70. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.  New York Human Rights Law §296 (7) provides that "it shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she [s]he has opposed any practices forbidden under this article.

71. As described above, the Defendant's actions are in violation of the New York State Human Rights Law.

72. As a direct and proximate result of these unlawful acts by Defendant, Ms. Peddy has suffered and continues to suffer lost wages, benefits and entitlements, damage to her career, pain and suffering, humiliation and emotional distress.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Discrimination in Violation of NYCHRL)

73. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

74. The New York City Administrative Code 8-107(1) provides that, "[i]t shall be an unlawful discriminatory practice: (a) [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

75. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(a)(a) by discriminating against Plaintiff because of her age.

76. As a direct and proximate result of these unlawful acts by Defendant, Ms. Peddy has suffered and continues to suffer lost wages, benefits and entitlements, damage to her career, pain and suffering, humiliation and emotional distress.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Retaliation in Violation of NYCHRL)

77. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

78. The New York City Administrative Code §8-1-07(7) provides that it shall be unlawful discriminatory practice: "For an employer…to discharge…or otherwise discriminate

against any person because such person has opposed any practices forbidden under this chapter…"

79. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

80. Because of the NYCHRL retaliation, Ms. Peddy has, and continues to be, damaged including the loss of past and future wages and benefits, and past and future physical and emotional distress, and the attorneys' fees and costs of bringing this action.

<u>**AS AND FOR A SEVENTH CAUSE OF ACTION**</u>

<u>**(NYCHRL Employer Liability)**</u>

81. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

82. New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor reads:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

12

1. The employee or agent exercised managerial or supervisory responsibility; or

2. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3. The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

83. Defendant violated the section cited herin as set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christine Peddy respectfully requests that this Court enter a judgment in her favor and against defendant, awarding the following relief:

(a) An award of damages in an amount to be determined at trial to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, fringe benefits, and sales bonuses and commissions;

(b) An award of damages in an amount to be determined at trial to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to compensation for severe mental anguish, anxiety, stress, humiliation, embarrassment, and emotional distress;

(c) An award of any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial;

(d) An award of punitive damages;

(e) An award of all costs that plaintiff has incurred in this action, including reasonable attorneys' fees;

(f) Such other relief as this Court may deem just and proper.

Dated: New York, New York
August 17, 2018

LAW OFFICES OF LAUREN GOLDBERG, PLLC

By:_____

LAUREN GOLDBERG (LG: 9890)
Attorney for Plaintiff
65 Broadway, 7th Floor
New York, N.Y. 10024
(646) 452-8380

14