UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE PEDDY, | Index No. 18 CV 07499 (RA) |
| Plaintiff, | |
| -against- | |
| L'ORÉAL USA, INC., | |
| Defendant. | |

**DEFENDANT L'ORÉAL USA INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LITTLER MENDELSON, P.C.**
*Attorneys for Defendant*
Eric A. Savage
Emma J. Diamond
900 Third Avenue, 8th Floor
New York, New York 10019
(212) 583-9600

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ................................................................ 3

LEGAL STANDARDS AND FRAMEWORK ................................................ 4

    A.    Summary Judgment Standard ................................................ 4

    B.    The Analytical Framework for Plaintiff's Age Discrimination Claims ................ 4

        1.    Plaintiff Cannot Establish a Prima Facie Case of Age Discrimination .................................................. 6

        2.    Defendant Has Articulated a Legitimate Reason for Plaintiff's Termination ................................................ 13

        3.    Plaintiff Has Not Established Pretext ...................... 15

    C.    There is No Evidence of Unlawful Retaliation .................................... 17

    D.    Plaintiff's Employer Liability Claim Should Be Dismissed ............................ 23

CONCLUSION ................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addo v. New York Health & Hosps. Corp.*,
  No. 15-CV-8103 (RA), 2017 WL 4857593 (S.D.N.Y. Oct. 25, 2017)...................................19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..........................................................................................................4

*Anderson v. State of New York, Office of Court Admin. of Unified Court Sys.*,
  614 F. Supp. 2d 404 (S.D.N.Y. 2009), *aff'd sub nom.*, *Anderson v. Cahill,* 417
  F. App'x 92 (2d Cir. 2011) ...........................................................................................5, 6

*Aspilaire v. Wyeth Pharm., Inc.*,
  612 F. Supp.2d 289 (S.D.N.Y. 2009).............................................................................19

*Boata v. Pfizer, Inc.*,
  No. 10-cv-4390 (KBF), 2013 WL 432585 (S.D.N.Y. Jan. 31, 2013), *aff'd*, 554
  Fed App'x. 73 (2d Cir. 2014)........................................................................................18

*Brown v. AstraZeneca Pharms., L.P.*,
  No. 03-6166 (DGT), 2006 U.S. Dist. LEXIS 57377 (E.D.N.Y. Aug. 16, 2006)....................13

*Byrnie v. Town of Cromwell Bd. of Educ.*,
  243 F.3d 93 ...................................................................................................................15

*Carlton v. Mystic Transp., Inc.*,
  202 F.3d 129 (2d Cir. 2000).............................................................................................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................................4

*Chertkova v. Connecticut Gen. Life Ins. Co.*,
  92 F.3d 81 (2d Cir. 1996) ................................................................................................6

*Clark Cty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)........................................................................................................22

*Cretella v. Liriano*,
  633 F. Supp. 2d 54 (S.D.N.Y. 2009)...............................................................................17

*Curry v. Fed. Express Corp.*,
  No. 14-CV-7844, 2016 U.S. Dist. LEXIS 51018 (S.D.N.Y. Mar. 16, 2016) ...........................5

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Dabney v. Christmas Tree Shops*,
 958 F. Supp. 2d 439 (S.D.N.Y. 2013), *aff'd sub nom, Dabney v. Bed Bath &
 Beyond*, 585 F. App'x 15 (2d Cir. 2014) ...............................................................24

*Deebs v. ALSTOM Transp., Inc.*,
 346 Fed. App'x 654 (2d Cir. 2009)......................................................................13

*Delaney v. Bank of Am. Corp.*,
 766 F.3d 163 (2d Cir. 2014)................................................................................14

*Delaney v. Bank of Am. Corp.*,
 908 F. Supp. 2d 498 (S.D.N.Y. 2012)..................................................................14

*Emanuel v. Oliver, Wyman Co.*,
 85 F. Supp. 2d 321 (S.D.N.Y. 2000).......................................................................6

*Encarnacion v. Isabella Geriatric Ctr., Inc.*,
 No. 11 Civ. 3757, 2014 WL 7008946 (S.D.N.Y. Dec. 12, 2014)..........................24

*Fazzari v. Cohen, Pontani, Lieberman, & Pavane, LLP*,
 No. 14-cv-6549 (NRB), 2019 WL 1258483 (S.D.N.Y. Mar. 19 2019)...................6

*Gentile v. Potter*,
 509 F. Supp. 2d 221 (E.D.N.Y. 2007) .....................................................................5

*Goonewardena v. N.Y.S. Workers' Comp. Bd.*,
 No. 09-CV-8244, 2016 U.S. Dist. LEXIS 16552 (S.D.N.Y. Feb. 9, 2016)
 (*Abrams, J.*)............................................................................................................5

*Grady v. Affiliated Cent., Inc.*,
 130 F.3d 553 (2d Cir. 1997).............................................................................8, 13

*Greenway v. Buffalo Hilton Hotel*,
 143 F.3d 47 (2d Cir. 1998).....................................................................................4

*Hill v. Bloomberg L.P.*,
 No. 14-CV-9809, 2016 U.S. Dist. LEXIS 54114 (S.D.N.Y. Apr. 20, 2016)......................5, 14

*Holt v. KMI-Continental, Inc.*,
 95 F.3d 123 (2d Cir. 1996)...................................................................................18

*Hu v. UGL Servs. Unicco Operations Co.*,
 No. 13 CIV. 4251 LGS, 2014 WL 504215 (S.D.N.Y. Oct. 9, 2014)......................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hurd v. New York Health & Hosps. Corp.*,
  04-cv-998 (PAC) 2007 U.S. Dist. LEXIS 15635 (S.D.N.Y. Mar. 5, 2007) ...........................12

*Hussein v. Hotel Employees & Restaurant Union, Local 6*,
  108 F. Supp.2d 360 (S.D.N.Y. 2000), *vacated on other grounds*, 14 Fed.
  App'x 39 (2d Cir. 2001).............................................................................................................22

*Int'l Healthcare Exch., LLC v. Global Healthcare, LLC*,
  479 F. Supp. 2d 345 (S.D.N.Y. 2007).......................................................................................19

*Jimenez v. City of New York*,
  605 F. Supp. 2d 485 (S.D.N.Y. 2009)..................................................................................11, 12

*Kalra v. HSBC Bank U.S., N.A.*,
  567 F. Supp. 2d 385 (E.D.N.Y. 2008) .......................................................................................17

*Kho v. New York and Presbyterian Hosp.*,
  344 F. Supp. 3d 705 (S.D.N.Y. 2018) (Abrams, J.)..............................................................13, 17

*Lambert v. Trump Int'l Hotel & Tower*,
  304 F. Supp. 3d 405 (S.D.N.Y. 2018).......................................................................................22

*Leibowitz v. Cornell Univ.*,
  584 F.3d 487 (2d Cir. 2009).........................................................................................................5

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015).........................................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).....................................................................................................................4

*Mattera v. JPMorgan Chase Corp.*,
  740 F. Supp. 2d 561 (S.D.N.Y. 2010).......................................................................................14

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973).............................................................................................................4, 5, 13

*McDowell v. T-Mobile USA, Inc.*,
  307 Fed. App'x 531 (2d Cir. 2009)............................................................................................18

*McMenemy v. City of Rochester*,
  241 F.3d 279 (2nd Cir. 2001).....................................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Meyer v. McDonald*,
  241 F. Supp. 3d 379 (E.D.N.Y. 2017), *aff'd sub nom. Meyer v. Shulkin*, 722 F.
  App'x 26 (2d Cir. 2018)..................................................................................................7

*Meyer v. Shulkin*,
  722 F. App'x 26 (2d Cir.), *cert. denied sub nom. Meyer v. Wilkie*, 138 S. Ct.
  2583 (2018)....................................................................................................................22

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)...............................................................................4, 13, 18

*Milano v. Astrue*,
  No. 05 Civ 6527 (KMW)(CDF), 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008)...................11

*Mittl v. N.Y. State Div. of Human Rights*,
  100 N.Y. 2d 326, 797 N.E.2d 660 (2003).................................................................5

*Moy v. Perez*,
  No. 16-CV-3588, 2017 WL 4534777 (2d Cir. Oct. 11, 2017)................................15

*O'Leary v. New York State Unified Court System*,
  No. 05 Civ. 6722 (HB) 2007 WL 2244483 (S.D.N.Y. Aug. 6, 2007).............................15, 16

*Oliver–Simon v. Nicholson*,
  384 F. Supp. 2d 298 (D.D.C. 2005)....................................................................11

*Palak v. St. Francis Hosp.*,
  No. 14-CV-4383, 2015 WL 3682805 (E.D.N.Y. June 12, 2015)............................7

*Parcinski v. Outlet Co.*,
  673 F.2d 34 (2d Cir.1982)...................................................................................14

*Pustilnik v. Battery Park City Auth.*,
  No. 18-CV-9446 (RA), 2019 WL 6498711 (S.D.N.Y. Dec. 3, 2019).......................6

*Reyes v. Krasdale Foods, Inc.*,
  No. 12-CV-1595, 2013 U.S. Dist. LEXIS 73985 (S.D.N.Y. May 22, 2013)...........4

*Schnabel v. Abramson*,
  232 F.3d 83 (2d Cir. 2000)...................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Simmons v. City of New York*,
 No. 16-CV-1589 (VEC), 2017 WL 6397745 (S.D.N.Y. Dec. 13, 2017)................................12

*South v. Cont'l Cas. Co.*,
 No. 17-CV-5741 (RA), 2018 WL 4689106 (S.D.N.Y. Sept. 27, 2018)
 (Abrams, J.)......................................................................................................7, 9, 10, 15

*St. Mary's Honor Center v. Hicks*,
 509 U.S. 502 (1993).........................................................................................................14

*Summa v. Hofstra University*,
 708 F.3d 115 (2d Cir. 2013).........................................................................................21, 22

*Terry v. Ashcroft*,
 336 F.3d 128 (2d Cir. 2003)...............................................................................................18

*Tu v. Oppenheimerfunds, Inc.*,
 No. 10-cv-4971 (PKC) 2012 U.S. Dist. LEXIS 19867 (S.D.N.Y. Feb. 16,
 2012) ...........................................................................................................................19, 20

*Twomey v. QuadGraphics*,
 No. 13-CV-1109 (RA), 2015 WL 5698002 (S.D.N.Y. Sept. 28, 2015) ............................7, 16

*Vaigasi v. Solow Mgmt Corp.*,
 No. 11-CV-5088 (RMB) (HBP), 2017 WL 945932 (S.D.N.Y. Feb. 16, 2017)....................10

*Vance v. Ball State Univ.*,
 570 U.S. 421 (2013).........................................................................................................24

*Wilkinson v. New York State*,
 No. 18-CV-4148 (PKC) (LB), 2019 WL 5423573 (E.D.N.Y. Oct. 22, 2019) ......................20

*Williams v. City of New York*,
 No. 11 Civ. 9679(CM), 2012 WL 3245448 (S.D.N.Y. Aug. 8, 2012) ..................................22

*Woldeselassie v. Am. Eagle Airlines/Am. Airlines*,
 No. 12 CIV. 07703 LGS, 2015 WL 456679 (S.D.N.Y. Feb. 2, 2015), *aff'd sub
 nom. Woldeselassie v. Am. Eagle Airlines, Inc.*, 647 F. App'x 21 (2d Cir.
 2016) ..............................................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Woods v. N.M.C. Labs*,
　1997 U.S. Dist. LEXIS 24314 (E.D.N.Y. July 14, 1997), *aff'd,* 162 F.3d 1149
　(2d 1998) ........................................................................................................................18

*Woroski v. Nashua Corp.*,
　31 F.3d 105 (2d Cir.1994) ............................................................................................13

**Other Authorities**

Fed R. Civ. P. 56(c) ............................................................................................................4

N. Y. C. Admin. Code § 8-107(1) ....................................................................................25

N.Y.C. Admin. Code § 8-107(13)(b) ....................................................................23, 24, 25

## PRELIMINARY STATEMENT

Plaintiff Christine Peddy ("Plaintiff" or "Peddy") began her employment with Defendant L'Oréal USA, Inc. ("L'Oréal" or "Defendant") when she was 45 years old and she remained employed there for over two years. During that time, Plaintiff received pay increases and worked on a number of marketing efforts on behalf of L'Oréal's Matrix and L'Oréal Professionel ("LP") brands. In early 2016, L'Oréal's Matrix brand sought to optimize its performance by eliminating unnecessary layers in the business structure. In her position as Assistant Vice President ("AVP") of channel marketing, Plaintiff played a very peripheral role, which focused on the execution of marketing plans rather than developing brand strategy. It was determined that the Brand would be better served if more managerial-level employees below the rank of AVP performed her tasks, meaning that Plaintiff's supervisory role could be eliminated.

Shortly after her 2016 termination, Plaintiff wrote to L'Oréal senior executives asking to be reinstated to her position and complaining that her termination was not "fair." She complained that she would now have to apply to open positions at L'Oréal as an "external[]" candidate rather than a L'Oréal employee, which she claimed put her at a disadvantage. She concluded her three-page letter with a conclusory statement alleging that her "age and gender had something to do with this." Without conducting any investigation into her claims, L'Oréal's then-Chief Executive Officer directed the Human Resources ("HR") team to find Plaintiff an alternate position. By mid-June, 2016, Plaintiff was reinstated to an AVP position in L'Oréal's LP brand, with full salary and benefits for the time she had missed.

In November 2017, L'Oréal implemented a financially-driven division-wide reduction in force ("RIF") meant to reduce costs, a decision which was led by individuals, all of whom were

over the age of 40.  Although the November 2017 RIF eliminated the positions of eight employees, some over the age of 40, it retained over 200 employees in the same division over that age.

Plaintiff asks this Court to believe that the same company which hired her at age 45 terminated her two years later *because* of her age.  As discussed further below, there is no factual basis for this contention, nor is there any material factual dispute sufficient to raise an inference of discrimination or pretext.  For this reason alone, Plaintiff's Complaint should be dismissed.

Similarly, Plaintiff asserts that she was fired in retaliation for comments she allegedly made on two employee satisfaction surveys on which she claims she complained about age discrimination inside the Company.  However, it is undisputed that these surveys were anonymous and Plaintiff took no steps to reveal her identity.  Moreover, her comments did not raise the issues she now says they did, and she admitted at deposition that she did not actually "use those words" or even include the word "age" or "older" in these alleged complaints.  Additionally, the individuals responsible for decisions impacting her employment, including but not limited to, those who decided to eliminate her position, had not read her alleged comments and thus did not take them into account in making those decisions.  This claim is utterly devoid of any factual or legal underpinning and should be dismissed.

Finally, Plaintiff alleges that the Company refused to rehire her after her termination either because of her age or in retaliation for her alleged complaints about discrimination.  This claim fails on several counts.  First, the same recruiter from the Talent Acquisition team who rejected some of her post-termination applications for reemployment was the very person who approved her original application two years earlier.  It is nonsensical to suggest that this same recruiter rejected her applications a mere two years later due to Plaintiff's age.  Indeed, neither he nor the other Talent Acquisition team members handling her many applications for employment knew

Plaintiff's age, nor did they know about any of her alleged protected conduct regarding same, so they could not have retaliated against her.

The truth is that Plaintiff has employed a kitchen-sink approach in applying for re-employment, submitting applications for jobs for which she was not qualified, not suited and for which the Company found applicants it legitimately considered to be better candidates.  For example, many of the positions for which she applied were more senior to Plaintiff's last role – effectively seeking a promotion – or conversely, they were titled so far below her last role that they would reasonably be considered to be a demotion.  In addition, even when the job she sought was the right level, it was often in a division of the Company for which Plaintiff had limited skills and experience and was far less qualified than the candidates who were ultimately chosen.  Simply put, Plaintiff's mere *belief* that she was denied job opportunities because of her age or her alleged complaints to the Company is insufficient to establish her claim of retaliation or to withstand summary judgment

In sum, L'Oréal is entitled to summary judgment because there is no direct or indirect evidence of any age discrimination or retaliation.  Plaintiff's subjective belief that she was a star performer, or was denied job opportunities because of her alleged complaints to the Company cannot establish a basis for claims of discrimination or retaliation. The Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

Facts relevant to this motion are set forth in the accompanying declarations of Candy Gebhart ("Gebhart Decl."), dated February 19, 2020, David Greenberg ("Greenberg Decl."), dated February 18, 2020, Sean Killeen ("Killeen Decl."), dated February 18, 2020, Maria Morales ("Morales Decl."), dated February 20, 2020, Gregory Mucisko ("Mucisko Decl."), dated February 12, 2020, Antonio Martinez-Rumbo ("Martinez-Rumbo Decl.") dated February 19, 2020, Farida

Mercedes ("Mercedes Decl.") dated February 19, 2020 and Eric A. Savage ("Savage Decl."), dated February 20, 2020 as well as in Defendant's Rule 56.1 Statement of Material facts, dated February 20, 2020 ("Rule 56.1").

## LEGAL STANDARDS AND FRAMEWORK

### A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issues as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *Reyes v. Krasdale Foods, Inc.*, No. 12-CV-1595, 2013 U.S. Dist. LEXIS 73985, at *10 (S.D.N.Y. May 22, 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  To survive summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, she must produce sufficient admissible evidence from which a reasonable fact-finder could find in her favor. *Id.*   Importantly, Plaintiff cannot escape summary judgment by presenting conclusory or speculative materials.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.     The Analytical Framework for Plaintiff's Age Discrimination Claims

Claims of discrimination under the ADA, NYSHRL and NYCHRL[1] are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998);

---

[1]     At the summary judgment stage under the NYCHRL, claims must be assessed pursuant to the burden-shifting framework of *Mcdonnell-Douglas*, as well as a mixed motives analysis. *See Mihalik v. Credit Agricole Cheuvreux No. Am., Inc.*, 715 F.3d. 102, 110 n.8 (2d Cir. 2013).  Under the mixed-motives analysis, the plaintiff need only show that the employer treated her "less well" than other similarly-situated employees, at least in part for discriminatory reasons. *Id.*

*Mittl v. N.Y. State Div. of Human Rights*, 100 N.Y. 2d 326, 330, 797 N.E.2d 660 (2003) (NYSHRL); *Gentile v. Potter*, 509 F. Supp. 2d 221, 232 (E.D.N.Y. 2007).

Under *McDonnell Douglas*, a plaintiff must first state a *prima facie* case of discrimination. To establish discrimination under the NYCHRL, a plaintiff must show (1) that she was a member of a protected class, (2) that she was qualified for the position, (3) that she was treated differently from others because of her protected status in a way that was more than trivial, insubstantial, or petty, and (4) under circumstances giving rise to an inference of discrimination. *Curry v. Fed. Express Corp.*, No. 14-CV-7844,  2016 U.S. Dist. LEXIS 51018, at *11-12 (S.D.N.Y. Mar. 16, 2016); *see Goonewardena v. N.Y.S. Workers' Comp. Bd.*, No. 09-CV-8244, 2016 U.S. Dist. LEXIS 16552, at *49 (S.D.N.Y. Feb. 9, 2016) (*Abrams, J.*).

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the alleged conduct. *Curry*, 2016 U.S. Dist. LEXIS 51018 at *12 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009)).  To satisfy her burden at the final stage the plaintiff must establish that the employer's nondiscriminatory reason was pretext for discrimination, and that age was a "motivating factor," behind the actions she complains about. *Curry*, 2016 U.S. Dist. LEXIS 51018 at *13-14.  "[U]nder the NYCHRL, the burden of persuasion of the ultimate issue of discrimination always remains with the plaintiff." *Hill v. Bloomberg L.P.*, No. 14-CV-9809, 2016 U.S. Dist. LEXIS 54114, at *26 (S.D.N.Y. Apr. 20, 2016) (internal citations and quotation marks omitted).

"Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where plaintiff has offered little or no evidence of discrimination." *Anderson v. State of New York, Office of Court Admin. of Unified Court Sys.*, 614 F. Supp. 2d 404, 417 (S.D.N.Y. 2009) (granting summary judgment on discrimination claims where there was

insufficient evidence of discrimination), *aff'd sub nom.*, *Anderson v. Cahill,* 417 F. App'x 92 (2d Cir. 2011).  "Even in the discrimination context, a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." 614 F. Supp. 2d at 417. "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Id.* at 418.

### 1.    Plaintiff Cannot Establish a *Prima Facie* Case of Age Discrimination

The Court should dismiss Plaintiff's age discrimination claim because she cannot establish a *prima facie* case of age discrimination.  Specifically, Plaintiff cannot demonstrate that her termination occurred under circumstances giving rise to an inference of age discrimination. "An inference of discrimination can be drawn from circumstances including 'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus,' or 'preferential treatment given to employees outside the protected class[.]'") *Pustilnik v. Battery Park City Auth.*, No. 18-CV-9446 (RA), 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019) (*quoting Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).

Plaintiff was hired at 45 and fired at 47, which weighs against any inference of discrimination.  *See Emanuel v. Oliver, Wyman Co.*, 85 F. Supp. 2d 321, 334 (S.D.N.Y. 2000) ("no reasonable juror could conclude that [defendant fired plaintiff] because he was a mere eleven months older than when he was hired").

### a.    The Fact that All Relevant Decision-Makers Were in the Same Protected Class Weighs Against Discrimination

Ms. Gebhart, Ms. Morales and Mr. Brittingham, who played the key role in the 2016 termination, were aged 41, 41 and 56 at the time.  (56.1 ¶¶ 29, 33, 38).  Mr. Greenberg and Mr. Martinez-Rumbo, who played the key role in the November 2017 RIF, were aged 55 and 47, respectively. (56.1 ¶ 63).  These facts alone undermine Plaintiff's claims.  *See Fazzari v. Cohen,*

*Pontani, Lieberman, & Pavane, LLP,* No. 14-cv-6549 (NRB), 2019 WL 1258483, at *11 (S.D.N.Y. Mar. 19 2019) (granting summary judgment on ADEA claim where decision-makers "were themselves members of the same protected class as [plaintiff], and four of the five were either older than [plaintiff] or within five years of his age."

Likewise, at the time of Plaintiff's 2017 termination, Ms. Morris was 45, Ms. Ryan was 51, Ms. Gebhart was 43, Ms. Realson was 46, Ms. Mercedes was 40, Mr. Charbonnier was 50, Mr. Brittingham was 57, and Ms. Hibberson was 57.  (Mucisko Decl., Ex. A).  *See Meyer v. McDonald,* 241 F. Supp. 3d 379, 390 (E.D.N.Y. 2017) (inference against discrimination exists when the person who allegedly discriminated against plaintiff is a member of the same protected class.), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018); *South v. Cont'l Cas. Co.*, No. 17-CV-5741 (RA), 2018 WL 4689106, at *12 (S.D.N.Y. Sept. 27, 2018) (Abrams, J.) (finding plaintiff's reliance on allegedly discriminatory comment regarding age "especially unavailing" where the parties to the email were ages 66 and 63 and also occupied prominent managerial roles); *Palak v. St. Francis Hosp.,* No. 14-CV-4383, 2015 WL 3682805, at *8 (E.D.N.Y. June 12, 2015) ("[A]n inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class.  In other words, if a decision maker is in the same protected class as plaintiff, claims of discrimination become less plausible.") (citations and internal quotation marks omitted)

Further, neither Mr. Greenberg nor Mr. Martinez-Rumbo knew Plaintiff's age prior to the RIF. (56.1 ¶ 71); s*ee Twomey v. QuadGraphics*, No. 13-CV-1109 (RA), 2015 WL 5698002, at *10 (S.D.N.Y. Sept. 28, 2015) (finding no pretext where decision-maker testified "that he did not know the ages of Plaintiff…terminated during [RIF]" and rejecting the plaintiff's denial because he

"failed to point to any evidence–direct or circumstantial—in the record that would refute [the] assertion.")

### b.   The Same-Actor Defense Dispels Any Inference of Discrimination

Additionally, with respect to any purported claim relating to her applications for re-employment, the well-established same-actor defense applies.  Under the same actor inference, where, as here, the person who made the adverse decision was the same person who made the decision to hire, it is difficult to impute to him an invidious motivation that would be inconsistent with the decision to hire. *Carlton v. Mystic Transp., Inc*., 202 F.3d 129, 137 (2d Cir. 2000) (*quoting Grady v. Affiliated Cent., Inc*., 130 F.3d 553, 560 (2d Cir. 1997)). Invidious discrimination is especially unlikely "when the firing has occurred only a short time after the hiring." *Grady*, 130 F.3d at 560; *see also Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (applying same-actor inference when three years passed between hiring and firing of plaintiff).

Here, Talent Acquisition—specifically, Mr. Killeen and Ms. Charland—recruited, interviewed and recommended Plaintiff for hire in May 2015, when Plaintiff was 45 years old. (56.1 ¶¶ 25-28)  It was also Mr. Killeen who reviewed many of Plaintiff's applications for employment shortly after her 2017 termination. (56.1 ¶ 128)   Mr. Killeen decided not to rehire Plaintiff into any of the roles for which she applied at the Company.  (*See generally,* 56.1 ¶¶ 128-149)

No reasonable factfinder could conclude that during the 2 ½-year period when Plaintiff was employed by L'Oreal, Mr. Killeen inexplicably developed an animus against her because of her age and thus, subsequently refused to rehire her.  There is no evidence to show that when deciding not to rehire Plaintiff, Mr. Killeen considered anything unlawful.

### c.    Plaintiff Cannot Point to Any Direct Evidence of Discrimination

Most notably, no indicia of discrimination are present in this case.  Plaintiff confirmed that the only person in the entire company who made any comments regarding her age was Ms. Gebhardt. (56.1 ¶ 88)  Even her testimony about that alleged comment is too nebulous, indeed too innocuous, to sustain a discrimination claim:

> Q: What specifically did Candy Gebhart say to you that was derogatory based on your age?
> A: I don't remember the exact wording, but I obviously worked with her on a daily basis and had to meet with her once a week and there were several email exchanges where I felt –
> Q: Can you remember anything specific that she said that you considered derogatory on account of your age, not your job performance, not anything else, but your age?
> A: Not specifically, No.

(Peddy Dep. Tr. 95)

*See South*, 2018 WL 4689106, at *9  (granting summary judgment on NYCHRL where plaintiff failed to point to any comments that evince discriminatory animus.)

Second, Plaintiff has failed to prove that after her November 2017 termination, she was replaced by someone outside the alleged protected class.  *See Littlejohn v. City of New York*, 795 F.3d  297, 308 (2d Cir. 2015).

Third, Plaintiff has set forth no evidence of discriminatory animus on the part of Mr. Greenberg or Mr. Martinez-Rumbo – the executives responsible for approving her as part of the November 2017 RIF.  (56.1 ¶ 71).  As stated above, both decision-makers were in the same protected class as Plaintiff, dispelling any notion of discrimination. (Mucisko Decl., Ex. A) Instead, Plaintiff relies on her own unsubstantiated speculation that she was subjected to discrimination – allegations that are unavailing.[2]

---

[2]    "My interpretation from a fact standpoint is there was one individual who hired me into the company, but it was then a different individual that terminated me from the company. And in between that I formally complained about

Plaintiff concludes that she was subjected to disparate treatment because younger employees were "assisted and transferred to other positions within the company where[as] L'Oréal refused to help [Plaintiff]." (Savage Decl. Ex. I ¶ 56).  However, Plaintiff's attempts to show discrimination by cherry-picking younger individuals who were displaced and transferred also fails.  Of the five individuals Plaintiff cites in her Complaint[3], only one was terminated in a RIF similar to Plaintiffs. (56.1 ¶ 118).  Ms. Lam was assisted in finding an alternate position because she was a high performer; however, at the time she was aged 33.  The other four were either not displaced by a RIF or were not transferred into new positions. (*Id*). Thus, there are not similarly situated to Plaintiff.

Similarly, Plaintiff's allegation that she was replaced by younger workers lacks any merit. Plaintiff argues that, in April 2016, she was replaced by a younger woman "in her 30s," which according to her, creates an inference of discrimination.  (Savage Decl. Ex. I ¶ 14). However, the evidence establishes that Plaintiff was not replaced by a woman in her 30's, but that immediately after Plaintiff's 2016 termination, her AVP position was eliminated.  (56.1 ¶ 40). In fact, L'Oréal never rehired into Plaintiff's position. (*Id*). Thus, Plaintiff cannot compare herself employee similarly situated employee because there were none.[4]  *See South v. Cont'l Cas. Co.*, 2018 WL 4689106, at *9 (granting summary judgment where plaintiff did not adduce evidence showing that he was replaced by an employee who was younger.); *see also  Vaigasi v. Solow Mgmt Corp.*, No. 11-CV-5088 (RMB) (HBP), 2017 WL 945932, at *5–6 (S.D.N.Y. Feb. 16, 2017) (granting

---

the hostile, the hostility and the working environment that I was subject to…So I feel like it was a culmination of all that that led to the termination the first time, and also the second time." (Peddy Dep. Tr. 257:2-19)

[3]    Plaintiff alleges that Laurie Lam, Zachary Tod Rosenkoetter, Kevin Shapiro, Alexandr[a] Murtha and Christina Kennally were all displaced and subsequently transferred by L'Oreal. For a complete discussion of these individuals, please see 56.1 ¶ 99.

[4]    Note, in April 2017, Elizabeth Richardson was promoted from Director to a newly created role in LP as AVP of Marketing with a concentration in business and channel development.  This was a new role, which focused on sales and marketing, rather than Ms. Peddy's limited position focusing only on retail merchandising.

defendant summary judgment on NYCHRL age discrimination claim where plaintiff was replaced by two younger employees but where age differences were only seven and eight years).

Plaintiff also argues that discrimination can be inferred from L'Oréal's repeated failure to interview and select her for the jobs to which she applied. (Savage Decl. Ex. I ¶ 50).   Plaintiff contends that L'Oréal's repeated denial of her applications for available positions establishes a pattern or practice demonstrating a discriminatory intent. (Savage Decl. Ex. I ¶¶ 49-50).  However, the Southern District of New York has held that the "sheer number" argument is insufficient to raise a genuine issue of fact concerning pretext.  *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 523 (S.D.N.Y. 2009) (granting summary judgment where 20 separate decisions not to promote Plaintiff were made by 19 different decision-makers); *see also Milano v. Astrue,* No. 05 Civ 6527 (KMW)(CDF), 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008) (granting summary judgment despite plaintiff's application to 85 job postings).

In *Jimenez v. City of New York*, Plaintiff alleged age discrimination based on the undisputed fact that he had been rejected from 20 separate opportunities for promotion.  605 F. Supp. 2d at 485.  Judge McMahon noted that the plaintiff in the case was "unquestionably ambitious", and had applied to "every open executive level position," including some for which he was "indisputably not qualified," and others that "he had no reasonable prospect of obtaining." 605 F. Supp. 2d at 524. Judge McMahon further observed, "although several non-selections may be disheartening for plaintiff, the sheer number of non-selections alone is not sufficient to establish that defendant's proffered justifications were a pretext for discrimination." *Id.*, quoting *Oliver–Simon v. Nicholson*, 384 F. Supp. 2d 298, 314 (D.D.C. 2005).  There, like here, "it would make no sense if a plaintiff could raise a genuine issue of fact as to pretext simply by applying to and being rejected for

numerous jobs, without regard to whether [her] qualifications for each job were markedly superior to others who were considered for each job." 605 F. Supp. 2d at 524.

As demonstrated above, Plaintiff was not qualified for many of the positions to which she applied and/or was over-qualified for the managerial-level positions to which she also applied. Moreover, Mr. Killeen and the other Talent Acquisition recruiters for the respective positions to which plaintiff allegedly applied, provided detailed explanations of their processes and the reasons why the successful candidate was selected.  For instance, Mr. Killeen testified that he had never seen Talent Acquisition hire "an external candidate who was a previous L'Oréal employee into a lower level position." (56.1 ¶ 134).   Although not all of the decision-makers could not recall plaintiff's specific application, they all testified that she was provided as fair a review as any other external candidate.  (56.1 ¶ 127).  It is unreasonable for Plaintiff to argue that she should have been hired into a VP role, after receiving two successive "meets expectations" reviews and after considering the uncontroverted testimony of Plaintiff's two managers – Ms. Morris and Ms. Ryan – who both confirmed that Plaintiff was unqualified for such a role. (56.1 ¶ 146).

As discussed, plaintiff has failed to identify any evidence that the subjective assessments of the Talent Acquisition team – of which there were at least 12 reviewers – were based on any discriminatory animus.  *Hurd v. New York Health & Hosps. Corp.*, 04-cv-998 (PAC) 2007 U.S. Dist. LEXIS 15635 (S.D.N.Y. Mar. 5, 2007) (Subjective impressions from an interview alone have been upheld as a valid justification absent a showing of discriminatory motive.) Furthermore, "courts afford employers a great deal of discretion in assessing the credentials and qualifications of applicants and in determining the criteria for positions." *Simmons v. City of New York,* No. 16-CV-1589 (VEC), 2017 WL 6397745, at *15-16 (S.D.N.Y. Dec. 13, 2017) (granting summary judgment on discrimination claims where plaintiff's educational credentials combined with her

work citations and limited record of leadership and initiative did not render her "so objectively superior" to alternative candidates.)

Therefore, there are no facts giving rise to an inference of discrimination required for Plaintiff to establish her *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *See Kho v. New York and Presbyterian Hosp.*, 344 F. Supp. 3d 705 (S.D.N.Y. 2018) (Abrams, J.).

Plaintiff was terminated from her employment as a result of a division-wide reduction in force, which resulted in the termination of eight other individuals. (56.1 ¶ 72; *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Absent any evidence suggesting that her age played a role in the termination decision, Plaintiff cannot establish a *prima facie* case. *Grady v. Affiliated Cent.*, 130 F.3d 553, 561 (2d Cir. 1997) (affirming dismissal of age discrimination claims where plaintiff was unable to point to statements by decision-maker relating to her age or point to anyone she viewed as having animus against older workers); *Brown v. AstraZeneca Pharms., L.P.*, No. 03-6166 (DGT), 2006 U.S. Dist. LEXIS 57377, at *25 (E.D.N.Y. Aug. 16, 2006) (dismissing plaintiff's discrimination claim where he failed to offer evidence that at least one decision-maker was biased against his protected characteristic).

**2.    Defendant Has Articulated a Legitimate Reason for Plaintiff's Termination**

Even if Plaintiff were able to establish a *prima facie* case of age discrimination, which she cannot do, L'Oréal has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment – namely, the November 2017 RIF.

A RIF is a legitimate, nondiscriminatory reason for termination. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 109 (2d Cir.1994) (holding it sufficient for defendant to "demonstrate that it discharged [plaintiffs] as part of a business-justified company-wide reduction in force, conducted on an unbiased basis"); *see also Deebs v. ALSTOM Transp., Inc.*, 346 Fed. App'x 654, 657 (2d

Cir. 2009).  The Southern District of New York "has long held that ADEA claims arising from the results of a firm's force reduction will generally not lie where the record 'demonstrate[s] that the reorganization was a business decision made on a rational basis." *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 509 (S.D.N.Y. 2012), (quoting *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir.1982)) *aff'd*, 766 F.3d 163 (2d Cir. 2014). "Defendants' burden at this stage is not to prove nondiscrimination. Instead, defendants must 'introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 574 (S.D.N.Y. 2010) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).  L'Oréal has done so here.

The evidence shows that Plaintiff was selected for the RIF not because of her age, but because her position could be eliminated at little cost to the functioning of the LP division. (56.1 ¶¶ 69-70).  Neither Mr. Greenberg nor Mr. Martinez-Rumbo was aware of Ms. Peddy's age or that she alleged to have engaged in any protected activity when they decided to terminate her employment. (56.1 ¶ 71).  Indeed, although L'Oréal's rationale for selecting Plaintiff for termination does not have to be justified so long as it is non-discriminatory, in this case, her termination proved to be both non-discriminatory and a legitimate business decision.[5]  In any event, Plaintiff's own perception of herself as being a "star performer," and her disagreement with L'Oréal's assessment of her performance and value does not suggest an inference of discrimination and certainly, an employer is not required to accept an employee's assessment of her own performance when undertaking its own business decisions. *Hill v. Bloomberg L.P.*, No. 14-CV-9809, 2016 U.S. Dist. LEXIS 54114 at *26.

---

[5]   "While we must ensure that employers do not act in a discriminatory fashion, we do 'not sit as a super-personnel department that reexamines an entity's business decisions.'" *Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 169 (2d Cir. 2014).

Plaintiff's age claim is further undercut by an examination of the ages of the PPD employees who survived the November 2017 RIF.  Among those retained, 200 were aged 40 or above. (56.1 ¶ 83)  Likewise, 126 of those retained were older than Plaintiff (*i.e.* 48 years old or above). *See South*, 2018 WL 4689106 at *9  (composition of the workforce following plaintiff's termination was "detrimental to his claim" where "Defendants proffered evidence that two of their maître d's and at least on waitress, all of whom were older than plaintiff. . . continued to [work at the restaurant] after plaintiff was fired.")

Accordingly, this action must be dismissed in its entirety.

### 3.     Plaintiff Has Not Established Pretext

Even if Plaintiff could establish a *prima facie* case of age discrimination, she cannot prove that L'Oréal's legitimate, non-discriminatory reason for terminating her employment was a pretext for discrimination and age was a motivating factor for her termination.

As an initial matter, "[w]hen a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination." *Moy v. Perez*, No. 16-CV-3588, 2017 WL 4534777, at *3 (2d Cir. Oct. 11, 2017) ("In view of undisputed record evidence showing that Lau was more qualified than Moy in numerous respects, the meager list of qualifications for which Moy was superior cannot satisfy his burden to establish pretext). Courts, however, afford employers a great deal of discretion in assessing the credentials and qualifications of applicants and in determining the criteria for positions. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (stating that a court "must respect the employer's unfettered discretion to choose among qualified candidates" when a court is evaluating whether employer's purported reason was pretextual); *O'Leary v. New York State Unified Court System*, No. 05 Civ. 6722 (HB)

2007 WL 2244483, at *7 (S.D.N.Y. Aug. 6, 2007) ("Defendant's decisions regarding the professional experience and characteristics sought in a candidate, as well as the search committee's evaluation of Plaintiff's qualifications, are entitled to deference.").

Instead of offering evidence of discrimination, Plaintiff simply advances the fanciful theory that she was "well qualified to obtain" every position for which she applied and that she "was denied the opportunity to be considered for th[e]se positions because of her age and/or because she made consistent complaints within L'Oréal about age discrimination." (Savage Decl. Ex. I ¶¶ 49-50). As a matter of law, this assertion is insufficient to overcome L'Oréal's motion. *See Twomey v. QuadGraphics*, No. 13-CV-1109 (RA), 2015 WL 5698002, *10 (S.D.N.Y. Sept. 28, 2015) (Abrams, J.) (Even under the NYCHRL, "Plaintiff must offer some proof beyond his own assertions that age was a factor considered by [the defendant]."). Plaintiff has failed to present evidence demonstrating that her qualifications were, in fact, superior to those of the selected applicants <u>and</u> that no reasonable person could have selected the other applicants over her. *O'Leary*, 2007 WL 2244483 at *6. Thus, Plaintiff's claim of pretext is insufficient to defeat a motion for summary judgment.

Likewise, it is undisputed that seven other individuals were terminated in the November 2017 RIF. (56.1 ¶ 71). Plaintiff may believe that she should have been excluded from the RIF, but her perception of her own performance and qualifications is irrelevant. *Hu v. UGL Servs. Unicco Operations Co.*, No. 13 CIV. 4251 LGS, 2014 WL 504215, *17 (S.D.N.Y. Oct. 9, 2014) (dismissing NYCHRL claims holding, "[a] plaintiff's subjective disagreement with his reviews is not a viable basis for a discrimination claim").

When one removes all hyperbole, conjecture and speculation from Plaintiff's allegations, all that is left to support Plaintiff's claim of age bias is the undisputed fact that she was 47 when

she was terminated in November 2017. (56.1 ¶ 77).  However, contrary to Plaintiff's assertions,[6] the mere fact that an employee who is age 47 is terminated does not mean that the employee was terminated *because she was 47. See Kalra v. HSBC Bank U.S., N.A.*, 567 F. Supp. 2d 385, 401 (E.D.N.Y. 2008).  This is particularly true where many of the employees selected to remain working at L'Oréal after the RIF were either the same age or older than Plaintiff.

In sum, having failed to present any evidence of discrimination, Plaintiff asks the Court to give full credence to her speculation and subjective view of her own performance, neither of which is legally insufficient to establish discrimination.  *See, e.g., Kho*, 344 F. Supp. 3d at 720 (dismissing age discrimination claim brought under ADEA where plaintiff's "sole evidencewas her own conclusory statements and mere allegations which are not enough to defeat a motion for summary judgment."); *Cretella v. Liriano*, 633 F. Supp. 2d 54, 76 (S.D.N.Y. 2009) (dismissing discrimination and retaliation claims under "more liberal" NYCHRL because "[w]hile Defendants [came] forward with concrete justifications for Plaintiff's termination, Plaintiff proffer[ed] nothing more than conclusory denials and rampant speculation, which fail to support any inference of discriminatory or retaliatory conduct in light of Defendant's proffers.").

Plaintiff's inability to move her case beyond the *prima facie* stage mandates dismissal.

## C. There is No Evidence of Unlawful Retaliation

Plaintiff's retaliation claims cannot survive summary judgment because she cannot establish a *prima facie* case of retaliation, or demonstrate that she took an action opposing her employer's alleged discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.

---

[6]   When asked whether the fact that someone is let go at age 46 necessarily means they were let go *because* they were age 46, Peddy testified "yes." (Peddy Dep. 166:3-10).

To establish a retaliation claim, a plaintiff must make out a *prima facie* case that: (1) she participated (a) in a protected activity (b) known to the defendant; (2) the defendant took an employment action that disadvantaged the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003); *McMenemy v. City of Rochester*, 241 F.3d 279, 282, 83 (2nd Cir. 2001); *Holt v. KMI-Continental*, *Inc*., 95 F.3d 123, 130 (2d Cir. 1996).  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112. The Second Circuit has instructed, however, that "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by  retaliatory motives, or if the defendant proves the conduct was nothing more than 'petty slights or trivial inconveniences.'" *Id*. at 113 (internal citations omitted).

Protected activity –which is known to the employer - is the most basic element of a retaliation claim.  *Woods v. N.M.C. Labs,* 1997 U.S. Dist. LEXIS 24314, *2 (E.D.N.Y. July 14, 1997), *aff'd,* 162 F.3d 1149 (2d 1998).  Protected activity requires that Plaintiff demonstrate that she is asserting a claim of discrimination based on her status as a member in a protected category. *See McDowell v. T-Mobile USA, Inc.,* 307 Fed. App'x 531, 534 (2d Cir. 2009) (affirming summary judgment dismissing retaliation claim where plaintiff never explicitly complained about racial discrimination); *Boata v. Pfizer, Inc.*, No. 10-cv-4390 (KBF), 2013 WL 432585, at *6 (S.D.N.Y. Jan. 31, 2013) (employee's use of the word "discrimination" in email complaining about his performance review was insufficient to constitute protected activity), *aff'd*, 554 Fed App'x. 73 (2d Cir. 2014).  "[A]mbiguous complaints that do not make the employer aware of alleged

discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exch., LLC v. Global Healthcare, LLC,* 479 F. Supp. 2d 345, 357 (S.D.N.Y. 2007).

The onus is on the speaker to clarify to the employer that she is making a specific complaint of unfair treatment based on membership in a protected class. *Addo v. New York Health & Hosps. Corp.*, No. 15-CV-8103 (RA), 2017 WL 4857593, at *7 (S.D.N.Y. Oct. 25, 2017) (*quoting Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp.2d 289, 298 (S.D.N.Y. 2009). Generalized complaints by a plaintiff about perceived mistreatment at work absent a specific connection to discrimination based on a protected category are insufficient to establish protected activity. *Tu v. Oppenheimerfunds, Inc.*, No. 10-cv-4971 (PKC) 2012 U.S. Dist. LEXIS 19867, at *25-26 (S.D.N.Y. Feb. 16, 2012).

Here, Plaintiff claims that in 2016 she "filled out a questionnaire distributed by L'Oréal wherein she mentioned that L'Oréal created a hostile work environment for older employees." (56.1 ¶ 91). Likewise, in Plaintiff's June 8, 2018 EEOC Charge of Discrimination, she swore that in that same 2016 survey, she "gave feedback on how her manager Candy Gebhart intentionally harassed her because she was older and more experienced." (*Id.*) However, at her deposition, Plaintiff admitted that she asserted <u>no explicit complaint of discriminatory misconduct</u> to support these allegations.[7]

In her EEOC Charge of Discrimination, Plaintiff swore that in a September 2017 survey, "she again reiterated her message that she felt the company was not supportive of older people in that they denied older employees the same opportunity to advance as they allowed younger employees to advance." (56.1 ¶ 93). However, at deposition, Plaintiff was, again, unable to identify

---

[7]    Q: "Where does the word "age" appear? A: The exact word "age"? Q: Yes A: I don't specifically mention the word "age," use those words in this particular document. Q: What word – do you see the word "old" in here? A: In this particular document, no. (Peddy Dep. Tr. 107:10-18).

this language in her survey response. (56.1 ¶¶ 94-95).  Due to the survey's large size, Defendant permitted Plaintiff to take time – days, if necessary – to identify her complaint and advise Defendant in writing of the precise contents of her alleged complaint.  (*Id*.) Thus, on August 25, 2019, Ms. Peddy identified where on the 2017 survey she had made her complaint of discrimination and specifically "Row 426, Column AG" of the 2017 survey (56.1 ¶ 95).   There, Ms. Peddy wrote:

> Career advancement opportunities. To have a career you want to advance in the organization, and know that you can work towards a promotion and get it. There does not seem to be a fair process in place for this. You don't know about opportunities, or have a fair chance to be considered across divisions. They are not all posted. It seems to be based on who you know only. At each level, the required experience also widely varies which doesn't seem fair. Decision making and empowerment shouldn't be about cutting out layers which is often the senior people, to hire junior people. It should be about having the right balance to efficiently grow the business both strategically in an innovative way, and getting things done. Too many people are reporting into 1 senior individual at the moment and it's not effective. This concern needs to be better looked at from all angles, and levels of input…

Nowhere in this statement did Plaintiff articulate a specific claim that she believed she was being treated less well or unfairly based on her age.  At most, these comments would be considered to be workplace gripes and not protected speech. *Wilkinson v. New York State*, No. 18-CV-4148 (PKC) (LB), 2019 WL 5423573, at *12 (E.D.N.Y. Oct. 22, 2019) ("Complaints regarding unfair hiring practices, nepotism, cronyism, and favoritism" insufficient when Plaintiff did not allege that treatment was age-based.) Furthermore, this alleged complaint was insufficient to put L'Oréal on notice that Plaintiff was making a protected complaint of unfair treatment based on membership in a protected category. Plaintiff testified that in her view, management would read it and "know"

that she was complaining about age discrimination.[8]   However, given the vagueness of the statement, Plaintiff cannot be considered to have engaged in statutorily protected activity with respect to her alleged complaints on these surveys.

Plaintiff has also failed to establish that L'Oréal had any knowledge of her alleged protected activity.  Even assuming that Plaintiff engaged in protected activity when completing the 2016 and 2017 surveys, she still has not proven that L'Oréal read her <u>anonymous</u> complaint and associated it to her.  (56.1 ¶¶ 90-98).  Therefore, Plaintiff has not demonstrated facts sufficient to establish that she engaged in protected activity or that L'Oréal knew of her protected activity relating to either her 2016 or 2017 survey complaints.

To the extent Plaintiff alleges that her June 2016 email to Sarah Hibberson constitutes protected activity for which she was ultimately terminated in November 2017, her retaliation claim must still fail because there is no causal connection between her June 2016 complaint and the termination seventeen months later.  Absent any direct evidence of retaliation, Plaintiff must show, among other things, a causal connection between the protected activity and the adverse action. Here, Peddy cannot establish that any of the decision-makers in the November 2017 RIF knew of her June 2016 protected activity.  In fact, Mr. Greenberg, Mr. Martinez-Rumbo, the decision-makers for the 2017 RIF, had not been hired into PPD and/or had not met Plaintiff until 2017. (56.1 ¶¶ 63, 71).

Even if Mr. Greenberg or Mr. Martinez-Rumbo had no knowledge of Plaintiff's protected activity, the existence of a "temporal connection" might be enough to permit a "reasonable jury to find causation." *Summa v. Hofstra University*, 708 F.3d 115, 127 (2d Cir. 2013). The problem for

---

[8]   "Q: …Somebody reading this, looking at this, how would they know that this has anything to do with your age as opposed to you being a woman, as opposed to your being white, as opposed to your being in a religious group, as opposed to your being a good employee, a bad employee or anything else? A: Well Candy [Gebhart] read it and she knows how she treated me because of my age, so she would know." (Peddy Dep. Tr. 114:23-115:10).

Plaintiff is that the temporal proximity between the protected activity and the adverse employment action "must be very close" in time. *Meyer v. Shulkin*, 722 F. App'x 26, 29 (2d Cir.) (no causal connection where eight years elapsed between complaint and claimed adverse employment action), *cert. denied sub nom*. *Meyer v. Wilkie*, 138 S. Ct. 2583 (2018). The Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated." *Summa*, 708 F.3d at 128.

However, the passage of about two months between the protected activity and the adverse action appears to be the approximate dividing line. *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) (granting summary judgment on Plaintiff's Title VII and NYSHRL retaliation claims where passage of time between adverse acts was greater than several months thereby defeating inference of discriminatory intent.).

Here, there is no temporal connection which would permit a reasonable jury to find causation as to Peddy's termination.  Plaintiff sent Ms. Hibberson an email on June 1, 2016 protesting her termination, stating that the RIF was not "fair" and complaining that she would have to apply to roles as an "external candidate." (56.1 ¶¶ 44). In baseless and conclusory fashion, she stated that "age and gender" "had something to do with" her termination.  (*Id*.).  *One and a half years later,* Plaintiff was terminated in the November 2017 RIF, seventeen months after her letter to Ms. Hibberson.  *Hussein v. Hotel Employees & Restaurant Union, Local 6*, 108 F. Supp.2d 360, 367 (S.D.N.Y. 2000) ("The passage of more than two months defeats any retaliatory nexus."), *vacated on other grounds*, 14 Fed. App'x 39 (2d Cir. 2001), *Williams v. City of New York*, No. 11 Civ. 9679(CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged."); *see also Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273  (2001) (citing

with approval cases holding three and four month gaps between protected activity and adverse action to be insufficient to establish causal connection).   Therefore, to the extent Plaintiff is alleging retaliation for her June 1, 2016 complaint, causation is lacking here.

Finally, to the extent Plaintiff alleges that the denial of her employment applications is retaliatory, the undisputed record demonstrates that the Talent Acquisition team members who considered her applications, had no knowledge of her alleged protected activity when rejecting her applications. (56.1 ¶¶ 123, 125)

**D.     Plaintiff's Employer Liability Claim Should Be Dismissed**

For the same reasons stated above, Count VII of the Complaint, seeking to hold L'Oréal liable under § 8-107(13)(b) fails. (Savage Decl. Ex. I  ¶¶ 81-83)  Although the basis of the cause of action is uncertain,[9] Defendant assumes Plaintiff is asserting a claim pursuant to NYCHRL's § 8-107(13) against L'Oréal for discriminatory conduct arising out of her fifth cause of action. Under § 8-107(13) of the NYCHRL, an employer will be liable for discriminatory acts by its employees or agents where:

> (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin. Code § 8-107(13)(b).

---

[9]     In her Complaint, Plaintiff merely quotes certain statutory language and then asserts "Defendant violated the section cited herein…" (Savage Decl. Ex. I ¶ 83.)

Plaintiff has failed to raise a triable issue of fact that L'Oréal acquiesced to discriminatory conduct or failed to exercise reasonable diligence to prevent it.   First, since Plaintiff cannot establish the underlying claim for age discrimination, she cannot establish vicarious liability for the same acts. *See Woldeselassie v. Am. Eagle Airlines/Am. Airlines*, No. 12 CIV. 07703 LGS, 2015 WL 456679, at *12 (S.D.N.Y. Feb. 2, 2015) ("while the NYSHRL and NYCHRL do establish supervisory liability for discriminatory conduct, Plaintiff has failed to show any discriminatory conduct in the first place") , *aff'd sub nom. Woldeselassie v. Am. Eagle Airlines, Inc.*, 647 F. App'x 21 (2d Cir. 2016); *Encarnacion v. Isabella Geriatric Ctr., Inc.*, No. 11 Civ. 3757, 2014 WL 7008946, at *12 (S.D.N.Y. Dec. 12, 2014) (construing NYCHRL).

Second, Plaintiff cannot establish that Mr. Killeen or any other member of the Talent Acquisition team "exercised managerial or supervisory responsibility" under the statute or that L'Oréal knew or should have known of their allegedly unlawful discriminatory conduct.  Section 8-107(13)(b) does not define supervisor or "managerial or supervisory responsibility."  In *Vance v. Ball State Univ.*, 570 U.S. 421 (2013), the Supreme Court interpreted the phrase "managerial or supervisory responsibility" for purposes of a Title VII claim, and held that an employee is a "supervisor" for purposes of vicarious liability only if he or she is empowered by the employer to take tangible employment actions against the victim, *e.g.*, effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 431. That holding provides guidance for interpreting the comparable language of the NYCHRL. See *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 460 (S.D.N.Y. 2013) (applying Vance to determine vicarious liability for discrimination claims under federal discrimination law and New York State Human Rights Law), *aff'd sub nom, Dabney v. Bed Bath & Beyond*, 585 F. App'x 15 (2d Cir. 2014).

Here, L'Oréal's Talent Acquisition teams *i.e.,* the team responsible for reviewing Plaintiff's applications and subsequently recommending other candidates whom they considered more qualified for hire, cannot be found to have "exercised managerial or supervisory responsibility" under the statute because ultimately the decision to hire was ultimately made by each division's hiring partner and division's HR team.  (56.1 ¶ 18)  Likewise, there is no evidence that Mr. Greenberg or Mr. Martinez-Rumbo, the decision-makers behind Plaintiffs 2017 termination, individually engaged in any unlawful discriminatory conduct or that L'Oréal knew or should have known or any such conduct.  Therefore, even if Plaintiff were able to establish a claim of age discrimination under Section 8-107(1), she cannot establish a claim for employer liability under Section 8-107(13).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety, with prejudice.


Date:   February 20, 2020
        New York, New York

Eric A. Savage
Emma J. Diamond
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Attorneys for Defendant*