AO 133   (Rev. 12/09) Bill of Costs

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/29/2021

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

CHRISTINE PEDDY )
)
v. ) Case No.: 1:18-cv-07499-RA-JLC
)
L'ORÉAL USA, INC. )
)

## BILL OF COSTS

Judgment having been entered in the above entitled action on ___07/15/2020___ against ___Plaintiff Christine Peddy___ ,
Date
the Clerk is requested to tax the following as costs:

| | |
|---|---|
| Fees of the Clerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ |
| Fees for service of summons and subpoena *Objected To, Objection is 90* | 0    2,846.50 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . . . | 7389.90    11,001.24 |
| Fees and disbursements for printing *Have Receipts for only $1,040.00 Does not have or receipts and Descrepancy what it is for* | 0    4,269.08 |
| Fees for witnesses *(itemize on page two)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Docket fees under 28 U.S.C. 1923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Costs as shown on Mandate of Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of court-appointed experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 . . . . . | |
| Other costs *(please itemize)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |

*Done on Submission, Objections Filed*    TOTAL    $    18,816.82
7,389.90

*SPECIAL NOTE:* Attach to your bill an itemization and documentation for requested costs in all categories.

## Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

[✓] Electronic service          [ ] First class mail, postage prepaid

[ ] Other:  _____

s/ Attorney:    s/ Eric A. Savage

Name of Attorney:  Eric A. Savage

For:          L'Oréal USA, Inc.                    Date:    06/10/2021
Name of Claiming Party

## Taxation of Costs

Costs are taxed in the amount of  $7,389.90                    and included in the judgment.

Ruby J. Krajick                    By: _____                    6/29/2021
Clerk of Court                         Deputy Clerk                          Date

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE PEDDY,

                    Plaintiff,

   -against-

L'ORÉAL USA, INC.,

                  Defendant.

1:18-cv-07499-RA-JLC

**NOTICE OF REQUEST
TO TAX COSTS**

TO:   Clerk of the Court
       U.S.D.C., Southern District of New York
       500 Pearl Street
       New York, New York 10001

**PLEASE TAKE NOTICE** that upon the Judgment entered on July 15, 2020 in favor of

L'Oréal USA, Inc. ("L'Oréal" or "Defendant") in the above-referenced matter, the Defendant,

through their counsel, request that the Clerk of the Court for the United States Courthouse for the

Southern District of New York, 500 Pearl Street, New York, New York 10001, on June 25, 2021

at 9:30 a.m., tax costs in their favor and against Plaintiff Christine Peddy in the amount of

$15,587.74, under Fed. R. Civ. P. 54(d), Local Rule 54.1 of this Court, and 28 U.S.C. § 1920.  In

support of their request to tax costs, Defendants attach their Bill of Costs and the Declaration of

Eric A. Savage with accompanying exhibits.

New York, New York
Dated: June 10, 2021

**LITTLER MENDELSON, P.C.**

By:___/s/ Eric A. Savage_____
    Eric A. Savage
    Emma J. Diamond
    Daniella E. Adler
    900 Third Avenue
    New York, NY 10022
    212-583-9600
    Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE PEDDY,

                           Plaintiff,

        -against-

L'ORÉAL USA, INC.,

                           Defendant.

1:18-cv-07499-RA-JLC

**DECLARATION IN SUPPORT OF
TAXATION OF COSTS**

STATE OF NEW YORK      )
                       )  ss.:
COUNTY OF NEW YORK     )

        **Eric A. Savage,** being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and an attorney with Littler Mendelson,

P.C., attorneys for L'Oréal USA, Inc. ("L'Oréal" or "Defendant") in this action.  This declaration

is based on my personal knowledge and a review of my firm's business records, and is submitted

in support of Defendants' application for an award of its taxable costs in this action pursuant to

28 U.S.C. § 1920, Rule 54 of the Federal Rules of Civil Procedure, and Rule 54.1 of the Local

Civil Rules of this Court.  Defendants seek recovery of their taxable costs in the amount of

$15,587.74.  On July 15, 2020, a judgment (the "Judgment") was entered in this action in favor

of Defendants and against Plaintiff Christine Peddy on all claims pursuant to the Court's July 15,

2020 Memorandum and Order (the "Opinion") granting Defendants' motion for summary

judgment and dismissing Plaintiff's Complaint.

        2.      Annexed hereto as Exhibit A is true and correct copy of the Opinion dated July

15, 2020, and entered on the docket in this case on July 15, 2020.

        3.      Annexed hereto as Exhibit B is Defendants' Bill of Costs.

        4.      Fed. R. Civ. P. 54(d)(1) provides, *inter alia*, that "costs other than attorneys' fees

shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." Local Rule 54.1 provides, in pertinent part, that within thirty days after the entry of final judgment "any party seeking to recover costs shall file with the clerk a request to tax costs annexing a bill of costs indicating the date and time of taxation."

     5.     As the prevailing party, Defendants seek to recover the following taxable costs:

     (a)     <u>Deposition Costs</u>:  Under 28 U.S.C. § 1920(2) and Local Rule 54.1(c), fees of a court reporter for all or any part of a stenographic or electronically recorded transcripts necessarily obtained for use in the case are taxable as costs.  Under Local Rule 54.1(c), "costs for depositions are also taxable if they were used by the court in ruling on a motion for summary judgment or other dispositive substantive motion.  Costs for depositions taken solely for discovery are not taxable."

     In this action, Defendants incurred deposition and transcript costs totaling at least $11,901.24 in connection with the Plaintiff's and other witnesses' depositions, not including the costs of videotaping the deposition.  The Opinion granted Defendants' summary judgment motion, which cited the deposition testimony of Plaintiff as well as the witnesses Farida Mercedes, Sarah Hrudowsky, Melissa Morris Bacallao, Scott Brittingham, Michelle Ryan, Sean Killen, Matt Fennell, and Carol Realson.  A true and correct copy of the court reporter's invoices for Plaintiff's and the other cited witness depositions is annexed hereto as Exhibit C.

     (b)     <u>Photocopying and Document Production Costs</u>:  Under 28 U.S.C. § 1920(3), fees for copies of papers necessarily obtained for use in the case are taxable costs. Defendants used a litigation support vendor and system for the purposes of document production and preparing copies of Exhibits.  True and correct copies of invoices of expenses relating to the electronic storage and transmittal of document productions are annexed hereto as Exhibit D.

In this action, Defendants incurred costs relating to the electronic storage, processing and photocopying totaling at least $1,040 in connection with production of documents in response to discovery requests.

(c)   Subpoena Service Costs:   Under 28 U.S.C. § 1920(1), fees for service of subpoenas necessarily executed for use in the case are taxable costs.   A true and correct copy of the process server's invoice for these services is annexed hereto as Exhibit E.

In this action, Defendants incurred process server costs totaling at least $2,646.50.

6.   To the best of my knowledge and belief, the costs set forth in the accompanying Bill of Costs are taxable under Fed. R. Civ. P. 54(d), 28 U.S.C § 1920, and Local Rule 54.1. They are correct to the best of my knowledge, and were reasonably and necessarily incurred in this action, and the services for which fees have been charged were actually and necessarily performed.

7.   Based on the foregoing, Defendants respectfully request that costs be taxed against Plaintiff in the total amount of $15,587.74.

New York, New York
Dated:   June 10, 2021                      **LITTLER MENDELSON, P.C.**

By:   _/s/ Eric A. Savage_
Eric A. Savage
Emma J. Diamond
Daniella E. Adler
900 Third Avenue
New York, NY 10022
212-583-9600
Attorneys for Defendants

3

# EXHIBIT A



**Worldwide - 24 Hours**
**(877) 702-9580**
**www.tsgreporting.com**

**REPORTING**

# INVOICE

**DATE:** 8/7/2019
**INVOICE #** 669531
**JOB #** 164366

**Bill To:**  Eric A. Savage Esq.
Littler Mendelson P.C.
900 Third Ave
8th Floor
New York, NY 10022

3341998

RECEIVED AUG 21 2019

LITTLER MENDELSON
Approved by
Amount to pay $2,459.25
TMKPR/EMPLOYEE # 1896 (required)
Charge to Client code or GL code:
054993.1117
Description:
LIT. Support
8-19-19
For Accounts Payable use only:
Vendor No. 37982-3
Voucher No. 90088852

**CASE:** Christine Peddy v. L'Oreal USA, Inc.
**WITNESS:** Christine Peddy
**DATE:** 7/24/2019
**LOCATION:** New York, NY

**Billing Comments / Instructions:**

| SHIP VIA | Messenger | TERMS | net 30 |
|----------|-----------|-------|--------|

| SERVICES | # PAGES / QTY | UNIT PRICE | AMOUNT |
|----------|---------------|------------|--------|
| Original & 1 Certified Transcript | 331 | $4.75 | $1,572.25 |
| Original Transcript - Evening Pages | 25 | $2.00 | $50.00 |
| Rough Transcript | 331 | $1.50 | $496.50 |
| Reporter Appearance Fee / Session - Videotaped | 2 | $70.00 | $140.00 |
| Reporter Appearance Fee / Evening Session - Videotaped | 1 | $105.00 | $105.00 |
| Compressed / ASCII / Word Index - Complimentary | 1 | $45.00 | $0.00 |
| Exhibits - Scanned & Hyperlinked - B&W | 312 | $0.25 | $78.00 |
| File Creation Fee - Hyperlinked Exhibits - Complimentary | 1 | $45.00 | $0.00 |
| | | SUBTOTAL | $2,441.75 |
| | | SHIPPING & HANDLING | $17.50 |
| | | TOTAL | $2,459.25 |

$1,700.25

Please make all checks payable to: TSG Reporting, Inc.    Federal ID # 41-2085745
Remit by Mail to: TSG Reporting, Inc.  PO Box 95568  Grapevine, TX  76099-9708
For prompt payment processing, please include the invoice # with your check.  All balances in arrears will be assessed a late fee of
1.5% per month, not to exceed the legal limit.  If you have any questions, please call TSG.
**THANK YOU FOR YOUR BUSINESS!**

OK to Pay 054993.1117
EAS
8/12/19

✓ ALLOWABLE
✗ NOT ALLOWABLE



**Worldwide · 24 Hours**
**(877) 702-9580**
**www.tsgreporting.com**

**REPORTING**

# INVOICE

**DATE:** 8/7/2019
**INVOICE #** 669532
**JOB #** 164366

**Bill To:**
Eric A. Savage Esq.
Littler Mendelson P.C.
900 Third Ave
8th Floor
New York, NY 10022

3341999

RECEIVED AUG 21 2019

LITTLER MENDELSON
Approved by _____
Amount to pay $1,048.75
TMKPR/EMPLOYEE # 1896
(required)
Charge to Client code or GL code:
054993.1117
Description: Out. Support
8-19-19
For Accounts Payable use only:
Vendor No. 37952-3
Voucher No. 90083853

**CASE:** Christine Peddy v. L'Oreal USA, Inc.
**WITNESS:** Christine Peddy
**DATE:** 7/24/2019
**LOCATION:** New York, NY

**Billing Comments / Instructions:**

| SHIP VIA | Messenger | TERMS | net 30 |
|---|---|---|---|

| SERVICES | # PAGES / QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| Videographer - 1st 2 Hours | 1 | $295.00 | $295.00 |
| Videographer - Additional Hours | 7 | $95.00 | $665.00 |
| Videographer - Add'l Hours - Evening Rate | 0.5 | $142.50 | $71.25 |
| Certified - MPEG - Complimentary | 5 | $50.00 | $0.00 |
| | | SUBTOTAL | $1,031.25 |
| | | SHIPPING & HANDLING | $17.50 |
| | | **TOTAL** | **$1,048.75** |

Please make all checks payable to: TSG Reporting, Inc.       Federal ID # 41-2085745
Remit by Mail to: TSG Reporting, Inc.  PO Box 95568  Grapevine, TX  76099-9708
For prompt payment processing, please include the invoice # with your check.  All balances in arrears will be assessed a late fee of
1.5% per month, not to exceed the legal limit.  If you have any questions, please call TSG.
**THANK YOU FOR YOUR BUSINESS!**

✗ NOT ALLOWABLE

OK to
pay EAS
054993.1117
8/12/19

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569



**VERITEXT**
LEGAL SOLUTIONS

| Bill To: | Eric A. Savage Esq.<br>Littler Mendelson, PC<br>900 3rd Ave<br>New York, NY, 10022-32██ | **3541137** | | **Invoice #:** | NY4026022 |
|---|---|---|---|---|---|
| | | | | **Invoice Date:** | 11/8/2019 |
| | | | | **Balance Due:** | $674.90 |

*Handwritten/stamp:* LITTLER MENDELSON
Approved by _____ $674.90
Amount to pay _____ 1896
TMKPR/EMPLOYEE # _____ (required)
Charge to Client code or GL code:
Description: 054993.1117
2H SUPPORT 11-27-19
For Accounts Payable _____
Vendor No. 85534-16
Voucher No. 90109967

| Case: | Peddy v. L'oreal |
|---|---|
| Job #: | 3611167 | Job Date: 10/29/2019 | Delivery: Normal |
| Billing Atty: | Eric A. Savage Esq. |
| Location: | Veritext - New York City, NY |
| | 1250 Broadway | Suite 2400<br>New York, NY 10001 |
| Sched Atty: | Eric A. Savage Esq. | Littler Mendelson, PC |

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| Christine Peddy | Original with 1 Certified Transcript | Page | 95.00 | $5.35 | $508.25 |
| | Attendance Fee | 1 | 1.00 | $95.00 | $95.00 |
| | Exhibits - Color | Per Page | 1.00 | $1.00 | $1.00 |
| | Exhibits | Per Page | 51.00 | $0.45 | $22.95 |
| | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 |
| | Conference Suite & Amenities | 1 | 1.00 | $0.00 | $0.00 |
| | Exhibits Scanned-Searchable - OCR | Per Page | 52.00 | $0.35 | $18.20 |
| | Shipping & Handling | Package | 1.00 | $29.50 | $29.50 |

| Notes: | | Invoice Total | $674.90 |
|---|---|---|---|
| | | Payment | $0.00 |
| | | Credit | $0.00 |
| | | Interest | $0.00 |
| | | Balance Due | $674.90 |

**TERMS:** Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*Handwritten:* OK to pay
EAS - 054993.1117
11/25/19
$531.20

| | **To pay online, go to**<br>**www.veritext.com**<br>Veritext accepts all major credit cards<br>(American Express, Mastercard, Visa, Discover) | **Please remit payment to:**<br>**Veritext**<br>P.O. Box 71303<br>Chicago IL 60694-1303 | **Invoice #:** | NY4026022 |
|---|---|---|---|---|
| 53791 | | | **Job #:** | 3611167 |
| | | | **Invoice Date:** | 11/8/2019 |
| | | | **Balance:** | $674.90 |

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569

*Handwritten stamp:*
LITTLER MENDELSON
Approved by ____
Amount to pay $1038.47
MGR/EMPLOYEE # 1896 (required)
Charge to Client code or GL code:
054993.1117
Description: Lit. Support
12.3.19
For Accounts Payable use only:
Vendor No. 05534
Voucher No. 90110123
90110124

# VERITEXT
LEGAL SOLUTIONS

Bill To:  Eric A. Savage Esq.
Littler Mendelson, PC
900 3rd Ave
New York, NY, 10022-3298

| | |
|---|---|
| **Invoice #:** | NY4046519 |
| **Invoice Date:** | 11/20/2019 |
| **Balance Due:** | $1,038.47 |

| | |
|---|---|
| **Case:** | Peddy v. L'oreal |
| **Job #:** | 3611167 | Job Date: 10/29/2019 | Delivery: Normal |
| **Billing Atty:** | Eric A. Savage Esq. |
| **Location:** | Veritext - New York City, NY |
| | 1250 Broadway | Suite 2400 New York, NY 10001 |
| **Sched Atty:** | Eric A. Savage Esq. | Littler Mendelson, PC |

3541159

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| Christine Peddy | Video - Initial Fee | 1 | 1.00 | $350.00 | $350.00 |
| | Video - Additional Hours | Hour | 1.50 | $155.00 | $232.50 |
| | Video Exhibits- Linked (LEF, PTZ, XMEF, SBF) | | 1.00 | $110.00 | $110.00 |
| | Video - Media and Cloud Services | Per disk | 1.00 | $42.00 | $42.00 |
| | Video - Digitizing & Transcript Synchronization | Hour | 1.50 | $175.00 | $262.50 |
| | Shipping & Handling - Video Media | Package | 1.00 | $41.47 | $41.47 |

| | |
|---|---|
| Invoice Total | $1,038.47 |
| Payment | $0.00 |
| Credit | $0.00 |
| Interest | $0.00 |
| **Balance Due** | **$1,038.47** |

Notes:

TERMS: Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*Handwritten:*
OK to pay
EJF 054993.1117
12/2/19

$0
NOT
ALLOWABLE

**To pay online, go to**
**www.veritext.com**

53791
Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

Please remit payment to:
**Veritext**
P.O. Box 71303
Chicago IL 60694-1303

| | |
|---|---|
| **Invoice #:** | NY4046519 |
| **Job #:** | 3611167 |
| **Invoice Date:** | 11/20/2019 |
| **Balance:** | $1,038.47 |

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569




VERITEXT
LEGAL SOLUTIONS

**3424719**

| Bill To: | Eric A. Savage Esq. | | Invoice #: | NY3990966 |
| | Littler Mendelson, PC | RECEIVED | Invoice Date: | 10/16/2019 |
| | One Newark Center | | Balance Due: | $2,114.17 |
| | 8th Flr | | | |
| | Newark, NJ, 07102 | | | |

| Case: | Peddy v. L'oreal |
| Job #: | 3528471 | Job Date: 10/10/2019 | Delivery: Expedited |
| Billing Atty: | Eric A. Savage Esq. |
| Location: | Veritext - New York City, NY |
| | 1250 Broadway | Suite 2400 |
| | New York, NY 10001 |
| Sched Atty: | Lauren Goldberg Esq. | Lauren Goldberg PLLC |

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| Farida Mercedes | Certified Transcript | Page | 330.00 | $3.65 | $1,204.50 |
| | Certified Transcript - Expedited | Page | 330.00 | $2.25 | $742.50 |
| | Exhibits | Per Page | 147.00 | $0.45 | $66.15 |
| | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 |
| | Exhibits Scanned-Searchable - OCR | Per Page | 147.00 | $0.35 | $51.45 |
| | Shipping & Handling - Expedited | Package | 1.00 | $49.57 | $49.57 |

| | | |
|---|---|---|
| Notes: | Invoice Total | $2,114.17 |
| | Payment | $0.00 |
| | Credit | $0.00 |
| | Interest | $0.00 |
| | Balance Due | $2,114.17 |

TERMS:   Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors.  No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*Handwritten notes:*
OK to pay
EAS
OS 4993.1117
11/15/19

LITTLER MENDELSON
Approved by ____
Amount to pay $2,114.17
TMKPR/EMPLOYEE # 1896 (required)
Charge to Client code or GL code:
054993.1117
Description: LH Suppor
11-18-19
For Accounts Payable use only:
Vendor No. 04934-16

$1,270.60

90106 775

**To pay online, go to**
**www.veritext.com**

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

53791

Please remit payment to:
Veritext
P.O. Box 71303
Chicago IL 60694-1303

Invoice #:   NY3990966
Job #:   3528471
Invoice Date:   10/16/2019
Balance:   $2,114.17

# J.H. BUEHRER & ASSOCIATES

# INVOICE

**CERTIFIED SHORTHAND REPORTERS**

**No : 9057**

Tax ID: 22-1500366          Vendor ID: V00000350

**Date : 10/31/2019**

884 Breezy Oaks Drive
Toms River, NJ 08753
Phone: 732-295-1975
Fax: 732-295-1989

3424636

**Bill to:**

**LITTLER MENDELSON, P.C.**
ATT: ERIC A. SAVAGE, ESQ.
900 THIRD AVENUE
NEW YORK, NY 10022

*[stamp:]* LITTLER MENDELSON
Approved by
Amount to pay $527.50 517.50
TMKPR/EMPLOYEE # ___ (required)
Charge to Client code or GL code:
054993.1117
Description: Lit Support
11-13-19
For Accounts Payable use only:
Vendor No. 57442
Invoice No. 90106063

| Court Reporter | In The Matter Of: | Held on: | Docket/CP # |
|---|---|---|---|
| Maribel Sypniewski | Christine Peddy v L'Oreal USA Inc. Deposition of Sarah Hrudowsky, held at our offices, Toms River, NJ | 10/4/2019 | 18cv7499 (RA) |

| Quantity | Description | Unit Price | Line Total |
|---|---|---|---|
| 138 | Pages to your office | $3.75 | $ 517.50 |
| 1 | Postage | $10.00 | $ 10.00 |

|  |  | **TOTAL** | **$ 527.50** |

517.50

Make all checks payable to **J.H. Buehrer & Associates**

THANK YOU FOR YOUR BUSINESS!

054993.1117
OK to pay
EAS   11/8/19

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569



3424720

| Bill To: | Eric A. Savage Esq. |
| | Littler Mendelson, PC |
| | 900 3rd Ave |
| | New York, NY, 10022-3298 |

| **Invoice #:** | NY4015328 |
| **Invoice Date:** | 10/31/2019 |
| **Balance Due:** | $1,159.10 |

| Case: | Peddy v. L'oreal |
|---|---|
| Job #: | 3528509 | Job Date: 10/18/2019 | Delivery: Normal |
| Billing Atty: | Eric A. Savage Esq. |
| Location: | Veritext - New York City, NY |
| | 1250 Broadway | Suite 2400 |
| | New York, NY 10001 |
| Sched Atty: | Lauren Goldberg Esq. | Lauren Goldberg PLLC |

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| Melissa M. Bacallao | Certified Transcript | Page | 180.00 | $3.50 | $630.00 |
| | Exhibits | Per Page | 107.00 | $0.45 | $48.15 |
| | Rough Draft | Page | 180.00 | $2.30 | $414.00 |
| | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 |
| | Exhibits Scanned-Searchable - OCR | Per Page | 107.00 | $0.35 | $37.45 |
| | Shipping & Handling | Package | 1.00 | $29.50 | $29.50 |

| Notes: | | Invoice Total | $1,159.10 |
|---|---|---|---|
| | | Payment | $0.00 |
| | | Credit | $0.00 |
| | | Interest | $0.00 |
| | | Balance Due | $1,159.10 |

TERMS:   Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days from invoice creation or for charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*Handwritten:* OK to pay
EAS
054993.1117
11/15/17

*Stamp:* LITTLER MENDELSON
Approved by _____
Amount to pay $1,159.10
TMKPR/EMPLOYEE # 1896
(required)
Charge to Client code or GL code:
054993.1117
Description: Lit. support
11-18-19
For Accounts Payable
Vendor No. 85534-76
Voucher No. 50106-776

*Handwritten:* 11/29/19

**To pay online, go to**
**www.veritext.com**

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

**Please remit payment to:**
Veritext
P.O. Box 71303
Chicago IL 60694-1303

| **Invoice #:** | NY4015328 |
| **Job #:** | 3528509 |
| **Invoice Date:** | 10/31/2019 |
| **Balance:** | $1,159.10 |

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569

# VERITEXT
## LEGAL SOLUTIONS

*[handwritten stamp: LITTLER MENDELSON Approved by ___ amount to pay $875.00 G/L#s/EMPLOYEE # 1896]*

*[handwritten: 05499 3.1119  LH Support  12·30·19]*

| | |
|---|---|
| **Bill To:** | Eric A. Savage Esq. |
| | Littler Mendelson, PC |
| | One Newark Center |
| | 8th Flr |
| | Newark, NJ, 07102 |

| | |
|---|---|
| **Invoice #:** | NY4068908 |
| **Invoice Date:** | 12/4/2019 |
| **Balance Due:** | $875.00 |

| | |
|---|---|
| **Case:** | Peddy v. L'oreal |
| **Job #:** | 3575443 | Job Date: 10/29/2019 | Delivery: Normal |
| **Billing Atty:** | Eric A. Savage Esq. |
| **Location:** | Veritext - New York City, NY |
| | 1250 Broadway | Suite 2400 |
| | New York, NY 10001 |
| **Sched Atty:** | Lauren Goldberg Esq. | Lauren Goldberg PLLC |

*[handwritten: 85534-16  Voucher No. 90118681]*

**3491984**

*[stamp: RECEIVED JAN 0 __ 2020]*

| | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| Scott Brittingham | Certified Transcript | Page | 242.00 | $3.50 | $847.00 |
| | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 |
| | Electronic Delivery and Handling | Package | 1.00 | $28.00 | $28.00 |

| | |
|---|---|
| Invoice Total | $875.00 |
| Payment | $0.00 |
| Credit | $0.00 |
| Interest | $0.00 |
| Balance Due | $875.00 |

**Notes:**

**TERMS:** Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*[handwritten: $847.02  OK to pay  EAS  054993.1117  12/23/19]*

| | |
|---|---|
| **To pay online, go to** | |
| **www.veritext.com** | |
| Veritext accepts all major credit cards | |
| (American Express, Mastercard, Visa, Discover) | |

53791

| | |
|---|---|
| **Please remit payment to:** | |
| **Veritext** | |
| **P.O. Box 71303** | |
| **Chicago IL 60694-1303** | |

| | |
|---|---|
| **Invoice #:** | NY4068908 |
| **Job #:** | 3575443 |
| **Invoice Date:** | 12/4/2019 |
| **Balance:** | $875.00 |

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569


3541791


VERITEXT
LEGAL SOLUTIONS

Bill To: Eric Savage
Littler Mendelson, PC
900 Third Avenue
New York, NY, 10022

RECEIVED DEC 24 2019

| | |
|---|---|
| **Invoice #:** | NY4068920 |
| **Invoice Date:** | 12/4/2019 |
| **Balance Due:** | $612.50 |

| | |
|---|---|
| **Case:** | Peddy v. L'oreal |
| **Job #:** | 3605582 | Job Date: 10/30/2019 | Delivery: Normal |
| **Billing Atty:** | Eric Savage |
| **Location:** | Veritext - New York City, NY |
| | 1250 Broadway | Suite 2400 |
| | New York, NY 10001 |
| **Sched Atty:** | Lauren Goldberg Esq. | Lauren Goldberg PLLC |

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| Michelle Ryan | Certified Transcript | Page | 167.00 | $3.50 | $584.50 |
| | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 |
| | Electronic Delivery and Handling | Package | | 1.00 | $28.00 | $28.00 |

| | |
|---|---|
| **Invoice Total** | $612.50 |
| **Payment** | $0.00 |
| **Credit** | $0.00 |
| **Interest** | $0.00 |
| **Balance Due** | $612.50 |

Notes:

TERMS:   Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors.   No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*OK to pay*
*EAS*
*054993. 1117*
*12/16/19*
*$584.50*

LITTLER MENDELSON
Approved by /VLM/
Amount to pay $612.50
                      (required)
TMKPR/EMPLOYEE # 1896
Charge to Client code or GL code:
054993.1117
Description: Lit. support
12·23·19
For Accounts Payable use only:
Vendor No. 25534-16
Voucher No. 9011/5812

To pay online, go to
**www.veritext.com**

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

Please remit payment to:
**Veritext**
**P.O. Box 71303**
**Chicago IL 60694-1303**

| | |
|---|---|
| **Invoice #:** | NY4068920 |
| **Job #:** | 3605582 |
| **Invoice Date:** | 12/4/2019 |
| **Balance:** | $612.50 |

53791

## Veritext, LLC
## New York Region

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID:20-3132569



**3541792**

RECEIVED DEC 2 4 2019

**Bill To:**   Eric A. Savage Esq.
Littler Mendelson, PC
900 3rd Ave
New York, NY, 10022-3298

| | |
|---|---|
| **Invoice #:** | NY4066581 |
| **Invoice Date:** | 12/3/2019 |
| **Balance Due:** | $689.50 |

| | |
|---|---|
| **Case:** | Peddy v. L'oreal |
| **Job #:** | 3605582 \| Job Date: 10/30/2019 \| Delivery: Normal |
| **Billing Atty:** | Eric A. Savage Esq. |
| **Location:** | Veritext - New York City, NY |
| | 1250 Broadway \| Suite 2400 |
| | New York, NY 10001 |
| **Sched Atty:** | Lauren Goldberg Esq. \| Lauren Goldberg PLLC |

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| Sean Killeen | Certified Transcript | Page | 189.00 | $3.50 | $661.50 |
| | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 |
| | Electronic Delivery and Handling | Package | 1.00 | $28.00 | $28.00 |
| | | | Invoice Total | | $689.50 |
| **Notes:** | | | Payment | | $0.00 |
| | | | Credit | | $0.00 |
| | | | Interest | | $0.00 |
| | | | Balance Due | | $689.50 |

**TERMS:**   Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*OK to pay*
*EAS*
*O54993.1117*
*12/16/19*

*$661.50*

LITTLER MENDELSON
Approved by _____
Amount to pay $689.50
TMKPR/EMPLOYEE # 1896 (required)
Charge to Client code or GL code:
O 54993.1117
Description:
Lit Support
12.23.19
For Accounts Payable use only:
Vendor No. 28534.16
90115814

**To pay online, go to**
**www.veritext.com**

53791

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

Please remit payment to:
**Veritext**
P.O. Box 71303
Chicago IL 60694-1303

| | |
|---|---|
| **Invoice #:** | NY4066581 |
| **Job #:** | 3605582 |
| **Invoice Date:** | 12/3/2019 |
| **Balance:** | $689.50 |

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569



**VERITEXT**
LEGAL SOLUTIONS

**3541460**

| | |
|---|---|
| Invoice #: | NY4050123 |
| Invoice Date: | 11/22/2019 |
| Balance Due: | $402.00 |

Bill To: Emma Fursland Esq
Littler Mendelson, PC
900 3rd Ave
New York, NY, 10022-3298

| | |
|---|---|
| **Case:** | Peddy v. L'oreal |
| **Job #:** | 3665468 \| Job Date: 11/13/2019 \| Delivery: Normal |
| **Billing Atty:** | Emma Fursland Esq |
| **Location:** | Veritext – New York City, NY |
| | 1250 Broadway \| Suite 2400 |
| | New York, NY 10001 |
| **Sched Atty:** | Lauren Goldberg Esq. \| Lauren Goldberg PLLC |

| | Description | Units | Quantity | Price | Amount | |
|---|---|---|---|---|---|---|
| Matt Fennell | Certified Transcript | Page | 90.00 | $3.50 | $315.00 | ✓ |
| | Exhibits - Color | Per Page | 10.00 | $1.00 | $10.00 | X |
| | Exhibits | Per Page | 55.00 | $0.45 | $24.75 | |
| | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 | |
| | Exhibits Scanned-Searchable - OCR | Per Page | 65.00 | $0.35 | $22.75 | X |
| | Shipping & Handling | Package | 1.00 | $29.50 | $29.50 | X |

| | | |
|---|---|---|
| **Notes:** | | $402.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| | | $402.00 |

**TERMS:** Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

Approved by

Amount to pay $402.00

TMKPR/EMPLOYEE # 7061 *(required)*

Charge to Client code or GL code:
054993.1117 $339.75

Description:
Dt. Supar
12-11-19

For Accounts Payable use only.
Vendor No. 05532-16
Voucher No. 9011306

*(handwritten: OK to pay EAS 054993.1117 12/10/19)*

| | |
|---|---|
| Invoice #: | NY4050123 |
| Job #: | 3665468 |
| Invoice Date: | 11/22/2019 |
| Balance: | $402.00 |

**To pay online, go to**
**www.veritext.com**

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

53791

Please remit payment to:
**Veritext**
**P.O. Box 71303**
**Chicago IL 60694-1303**

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID:20-3132569



LITTLER MENDELSON
Approved by
Amount to pay $300.10
TAXPR/EMPLOYEE # 3061 (required)
...arge to Client code or GL code:
054993.1117
...tion:
Lit. Support
12.3.19
For Accounts Payable use only:
Vendor No. 25534
Voucher No. 9011026

# VERITEXT
## LEGAL SOLUTIONS

| | |
|---|---|
| **Invoice #:** | NY4049046 |
| **Invoice Date:** | 11/21/2019 |
| **Balance Due:** | $300.10 |

Bill To:  Emma Fursland Esq
Littler Mendelson, PC
900 3rd Ave
New York, NY,10022-3298

| | |
|---|---|
| **Case:** | Peddy v. L'oreal |
| **Job #:** | 3861340 | Job Date: 11/11/2019 | Delivery: Normal |
| **Billing Atty:** | Emma Fursland Esq |
| **Location:** | Veritext - New York City, NY |
| | 1250 Broadway | Suite 2400 |
| | New York, NY 10001 |
| **Sched Atty:** | Lauren Goldberg Esq. | Lauren Goldberg PLLC |

**3541161**

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| | Certified Transcript | Page | 70.00 | $3.50 | $245.00 |
| | Exhibits | Per Page | 32.00 | $0.45 | $14.40 |
| Carol Realson | Litigation Package (all Electronic Files) | 1 | 1.00 | $0.00 | $0.00 |
| | Exhibits Scanned-Searchable - OCR | Per Page | 32.00 | $0.35 | $11.20 |
| | Shipping & Handling | Package | 1.00 | $29.50 | $29.50 |

| Notes: | | |
|---|---|---|
| | Invoice Total | $300.10 |
| | Total Payment | $0.00 |
| | Credit | $0.00 |
| | Interest | $0.00 |
| | Balance Due | $300.10 |

TERMS:   Payable upon receipt.  Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors.  No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

*OK to pay*
*ESF 054993.1117*
*12/2/19*

*$259.40*

**To pay online, go to**
**www.veritext.com**

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

53791

Please remit payment to:
**Veritext**
P.O. Box 71303
Chicago IL 60694-1303

| | |
|---|---|
| **Invoice #:** | NY4049046 |
| **Job #:** | 3661340 |
| **Invoice Date:** | 11/21/2019 |
| **Balance:** | $300.10 |

# EXHIBIT D



June 23, 2019

Client-Matter # **054993.1117**

Invoice No. **NDC-0549931117-20190531**

REMIT TO:
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, CA 94108-2693

| Item | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| RELATIVITY LICENSE | RELATIVITY LICENSE ($65/MO) | 5 | $65.00 | $325.00 |
| | | | **Total Due** | $325.00 |

*$0*

*Not allowable*

*No description of what it is for*



July 30, 2019

Client-Matter # **054993.1117**

Invoice No. **NDC-0549931117-20190630**
REMIT TO:
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, CA 94108-2693

| Item | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| RELATIVITY LICENSE | RELATIVITY LICENSE ($65/MO) | 5 | $65.00 | $325.00 |
| | | | **Total Due** | $325.00 |

*20
NOT ALLOWABLE
NO DESCRIPTION OF
WHAT IT IS FOR*



August 21, 2019

**Littler**
Employment & Labor Law Solutions Worldwide

Invoice No. **NDC-0549931117-20190731**

Client-Matter # **054993.1117**

REMIT TO:
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, CA 94108-2693

| Item | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| RELATIVITY LICENSE | RELATIVITY LICENSE ($65/MO) | 6 | $65.00 | $390.00 |
| | | | **Total Due** | $390.00 |

*$0*

*NOT ALLOWABLE*

*NO DESCRIPTION OF WHAT IT IS FOR*

# EXHIBIT E



Irving Botwinick, Founder
New York State Professional Process Servers
Association

Founding Member National Association
of Professional Process Servers

Associate Member of the following
State Process Servers Association:
Arizona, California, Colorado, Florida, Georgia,
New Jersey, Oregon, Tennessee, Washington

Society of Professional Investigators
Chairman of the Board

Associated Licensed Detectives of
New York State, Inc.
National Council of Investigation
and Security Services
Society of Professional Investigators
World Investigators Network Inc.

**SERVING by IRVING INC.**
*"Serving the Legal Community Since 1977."*

054993.1117

OK To Pay - Ian B 90080212

July 31, 2019

3402350

RECEIVED AUG 07 2019

ATTN: IAN BROWN

LITTLER MENDELSON P.C.
900 THIRD AVENUE
NEW YORK, NY 10022

| PLAINTIFF | DEFENDANT | SERVICE | CHARGE |
|---|---|---|---|
| Christine Peddy | L'ORÉAL USA, Inc. | Information Subpoena Same Day Emergency Service On Revlon, Inc. c/o Corporate Creations Network In Nyack, NY On 7/25/2019 | $450.00 |
| | | Attempt to Withdraw Subpoenas as Requested On 7/29/2019 | $350.00 |
| | | TOTAL BILL: | $800.00 |
| | | -20% Discount: | $160.00 |
| | | BALANCE: | $640.00 |

LITTLER MENDELSON
Approved by
Amount to pay $640.00
TMKPR/EMPLOYEE # 8996 (required)
Charge to Client code or GL code:
0 54993 .1117
Description:
LH Support
8-6-19
For Accounts Payable use only
Vendor No. 32724
Voucher No.

*WE ARE PRIVATE INVESTIGATORS LICENSED BY THE NEW YORK STATE DEPARTMENT OF STATE • LICENSE #11000079635*
WOOLWORTH BUILDING • 233 BROADWAY, SUITE 2201 • NEW YORK, NEW YORK 10279
(212) 233-3346 • Fax (212) 349-0338
e-mail: irving@servingbyirving.com • website: www.servingbyirving.com • Federal Tax I.D. # 13-3074123

Irving Botwinick, Founder
New York State Professional Process Servers
Association

Founding Member National Association
of Professional Process Servers

Associate Member of the following
State Process Servers Association:
Arizona, California, Colorado, Florida, Georgia,
New Jersey, Oregon, Tennessee, Washington

Society of Professional Investigators
Chairman of the Board

Associated Licensed Detectives of
New York State, Inc.
National Council of Investigation
and Security Services
Society of Professional Investigators
World Investigators Network Inc.



**SERVING by IRVING INC.**

*"Serving the Legal Community Since 1977."*

O54993.1117

**ATTN: IAN BROWN**

**LITTLER MENDELSON, P.C.**
**900 THIRD AVENUE**
**NEW YORK, NEW YORK 10022**

August 1, 2019

OK To Pay - Ian B

RECEIVED AUG 0 7 2019

| PLAINTIFF | DEFENDANT | SERVICE | CHARGE |
|---|---|---|---|
| Christine Peddy | L'Oreal USA, Inc. | Subpoena Same Day Emergency Service On Calvin Klein, Inc. On 7/29/19 & Retrieval of Subpoena | $350.00 |
| | | Attempted Service On 7/26/19 INCLUDES ATTEMPT AT 2ND LOCATION | $350.00 |
| | | **TOTAL BILL:** | $700.00 |
| | | **-20% Discount** | $140.00 |
| | | **BALANCE:** | $560.00 |

90080219

3402351

LITTLER MENDELSON
Approved by
Amount to pay $560.00
TMKPR/EMPLOYEE # 1896 (required)
Charge to Client code or GL code:
O 54993.1117
Description: LH Support
8-6-19
For Accounts Payable use only:
Vendor No. 37774
Voucher No.

*WE ARE PRIVATE INVESTIGATORS LICENSED BY THE NEW YORK STATE DEPARTMENT OF STATE • LICENSE #11000079635*
**WOOLWORTH BUILDING • 233 BROADWAY, SUITE 2201 • NEW YORK, NEW YORK 10279**
**(212) 233-3346 • Fax (212) 349-0338**
e-mail: irving@servingbyirving.com • website: www.servingbyirving.com • Federal Tax I.D. # 13-3074123



Irving Botwinick, Founder
New York State Professional Process Servers
Association

Founding Member National Association
of Professional Process Servers

Associate Member of the following
State Process Servers Association:
Arizona, California, Colorado, Florida, Georgia,
New Jersey, Oregon, Tennessee, Washington

Society of Professional Investigators
Chairman of the Board

Associated Licensed Detectives of
New York State, Inc.
National Council of Investigation
and Security Services
Society of Professional Investigators
World Investigators Network Inc.

**SERVING by IRVING Inc.**
*"Serving the Legal Community Since 1977."*

054993.1117

ATTN: IAN BROWN

LITTLER MENDELSON, P.C.
900 THIRD AVENUE
NEW YORK, NEW YORK 10022-3298

3341996

August 9, 2019

OK to Pay - Ian B.

INVOICE # SD-6716

| PLAINTIFF | DEFENDANT | SERVICE | CHARGE |
|-----------|-----------|---------|--------|
| Christine Peddy | L'Oréal USA, Inc. | Subpoena Emergency Service On Estee Lauder Inc. In Melville, NY | $450.00 |
| | | -20% Discount | $ 90.00 |
| | | TOTAL BILL: | $360.00 |

RECEIVED AUG 21 2019

LITTLER MENDELSON
Approved by
Amount to pay $360.00
TMKPR/EMPLOYEE # 01896
(required)
Charge to Client code or GL code:
054993.1117
Description:
Lit. Support
8·19·19
For Accounts Payable use only:
Vendor No. 87774
Voucher No. 90083850

*WE ARE PRIVATE INVESTIGATORS LICENSED BY THE NEW YORK STATE DEPARTMENT OF STATE • LICENSE #11000079635*
**WOOLWORTH BUILDING** • 233 BROADWAY, SUITE 2201 • NEW YORK, NEW YORK 10279
(212) 233-3346 • Fax (212) 349-0338
e-mail: irving@servingbyirving.com • website: www.servingbyirving.com • Federal Tax I.D. # 13-3074123

Irving Botwinick, Founder
New York State Professional Process Servers
Association

Founding Member National Association
of Professional Process Servers

Associate Member of the following
State Process Servers Association:
Arizona, California, Colorado, Florida, Georgia,
New Jersey, Oregon, Tennessee, Washington

Society of Professional Investigators
Chairman of the Board

Associated Licensed Detectives of
New York State, Inc.
National Council of Investigation
and Security Services
Society of Professional Investigators
World Investigators Network Inc.



*"Serving the Legal Community Since 1977."*

054993.1117

ATTN: IAN BROWN

LITTLER MENDELSON, P.C.
900 THIRD AVENUE
NEW YORK, NEW YORK 10022-3298

3408792

September 23, 2019

OK to Pay Ian B.

INVOICE # SD-7033

| PLAINTIFF | DEFENDANT | SERVICE | CHARGE |
|-----------|-----------|---------|--------|
| Christine Peddy | L'Oréal USA, Inc. | Subpoena Personal Service On Sharon De Jesus | $575.00 |
| | | -20% Discount | $115.00 |
| | | TOTAL BILL: | $460.00 |
| | | Subpoena Fees | $ 45.50 |
| | | Expenditures | $ 13.50 |
| | | Printing Fees | $  2.50 |
| | | BALANCE: | $521.50 |



RECEIVED OCT 07 2019

LITTLER MENDELSON
Approved by
Amount to pay $521.50
TMKPR/EMPLOYEE #
                    (required)
Charge to Client code or GL code:
0.54993.1117
Description:
Lit. Support
10-2-19
For Accounts Payable use only:
Vendor No. 37774
Voucher No. 90095420

WE ARE PRIVATE INVESTIGATORS LICENSED BY THE NEW YORK STATE DEPARTMENT OF STATE • LICENSE #11000079635
WOOLWORTH BUILDING • 233 BROADWAY, SUITE 2201 • NEW YORK, NEW YORK 10279
(212) 233-3346 • Fax (212) 349-0338
e-mail: irving@servingbyirving.com • website: www.servingbyirving.com • Federal Tax I.D. # 13-3074123

Irving Botwinick, Founder
New York State Professional Process Servers
Association

Society of Professional Investigators
Chairman of the Board

Founding Member National Association
of Professional Process Servers

Associated Licensed Detectives of
New York State, Inc.
National Council of Investigation
and Security Services

Associate Member of the following
State Process Servers Association:
Arizona, California, Colorado, Florida, Georgia,
New Jersey, Oregon, Tennessee, Washington

Society of Professional Investigators
World Investigators Network Inc.

**SERVING by IRVING INC.**

*"Serving the Legal Community Since 1977."*

054993.1117

September 23, 2019

ATTN: IAN BROWN

OK To Pay – Ian B

LITTLER MENDELSON, P.C.
900 THIRD AVENUE
NEW YORK, NEW YORK 10022-3298

3408794

INVOICE # SD-7034

| PLAINTIFF | DEFENDANT | SERVICE | CHARGE |
|---|---|---|---|
| Christine Peddy | L'Oréal USA, Inc. | Subpoena Rush Service Attempted Service On Sharon De Jesus At 19 W 34 St. | $350.00 |
| | | Private Practice Center of New York In Astoria, NY | $350.00 |
| | | TOTAL BILL: | $700.00 |
| | | -20% Discount | $140.00 |
| | | BALANCE: | $560.00 |
| | | Printing Fees | $  5.00 |
| | | FINAL BILL: | $565.00 |

RECEIVED OCT 2019

LITTLER MENDELSON
Approved by
Amount to pay $565.00
TMKPR/EMPLOYEE # _____
                (required)
Charge to Client code or GL code:
054993.1117
Description:
Lit Support
10-2-19
For Accounts Payable use only:
Vendor No. 37774
Voucher No. 90095422

WE ARE PRIVATE INVESTIGATORS LICENSED BY THE NEW YORK STATE DEPARTMENT OF STATE • LICENSE #11000079635
WOOLWORTH BUILDING • 233 BROADWAY, SUITE 2201 • NEW YORK, NEW YORK 10279
(212) 233-3346 • Fax (212) 349-0338
e-mail: irving@servingbyirving.com • website: www.servingbyirving.com • Federal Tax I.D. # 13-3074123

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/15/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE PEDDY,

                              Plaintiff,

              v.

L'ORÉAL USA, INC.,

                              Defendant

No. 18-CV-7499 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Christine Peddy commenced this action against Defendant L'Oréal USA, Inc.,

asserting claims for age discrimination and retaliation in violation of the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); the New York State Human Rights

Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and the New York City Human Rights Law

("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.* Before the Court is Defendant's motion

for summary judgment. For the reasons that follow, the motion is granted.

## BACKGROUND

### I.   Peddy's Employment History at L'Oréal[1]

#### A.   Peddy's Employment With Matrix and First Termination

On May 5, 2015, Peddy, then 45 years old, began her employment with L'Oréal as an

Assistant Vice President ("AVP") of Marketing for the Matrix brand in the Professional Products

Division ("PPD"). Def. Rule 56.1 Stmt. ¶¶ 30-31. Peddy was recruited for the role by Sean

---

[1] The following facts are drawn from the parties' Rule 56.1 Statements and their submissions in
connection with Defendant's motion for summary judgment. Where facts in a party's Rule 56.1 Statement
are supported by testimonial or documentary evidence and denied only by way of a conclusory statement
by the other party, without citation to conflicting testimonial or documentary evidence, the Court finds
such facts to be true. *See* S.D.N.Y. Local Rules 56. l(c)-(d).

Killeen and Wendy Charland of L'Oréal's Talent Acquisition team, both of whom had worked with Peddy previously. *Id.* ¶¶ 21, 25, 27. Peddy worked in the New York City office and reported to Laurie Lam, the Vice President ("VP") of Marketing for the PPD team. *Id.* ¶ 30. Peddy was responsible for managing strategic and direct marketing plans for the Matrix brand at national retailers and partner stores, as well as collaborating with other teams at L'Oréal such as the education, sales, and purchasing teams. *Id.* ¶ 32.

In or around June 2015, Candy Gebhart replaced Ms. Lam as the VP of Marketing for the PPD team and became Peddy's supervisor. *Id.* ¶ 33. At the time, Ms. Gebhart was 41 years old. *Id.* On December 17, 2015, Ms. Gebhart gave Peddy a performance rating of "Exceeds Expectations" for the 2015 Performance Year.[2] *Id.* ¶ 36. In the review, Ms. Gebhart stated that Peddy had a "can-do, positive attitude," that she "jump[ed] into action and establish[ed] many projects quickly with little guidance," and that she was "very dependable" at "deliver[ing] everything that I saw that was needed – without me asking," among other positive comments. Goldberg Decl. Ex. 55.

On February 22, 2016, Peddy completed a workplace questionnaire in which she expressed frustration about working with Ms. Gebhart, but did not specifically state that Ms. Gebhart treated her differently due to her age. Peddy Dep. 103:10-115:19 (Goldberg Decl. Ex. 1). L'Oréal asserts that General Managers used the results from the questionnaires to identify areas for improvement, but that the verbatim responses were "completely anonymous." Def.'s 56.1 Stmt. ¶ 98. Plaintiff disputes that the responses were anonymous in light of the fact that

---

[2] L'Oréal asserts that "[i]n 2015, a rating of 'Exceeds Expectations' was considered the norm," especially "for newer employees, whose baseline for performance was lower due to their lack of tenure on the job." Def.'s 56.1 Stmt. ¶ 35. Peddy, by contrast, contends that "[b]ased on L'Oréal's own written policy, an Exceeds Expectations was only given to a very small number of employees . . . As per the company rules, individuals who were considered new, were given a rating of 'Too New to Rate.'" Pl.'s 56.1 Stmt. ¶ 35.

Human Resources later discussed her responses with her.  Pl.'s 56.1 Stmt. ¶ 98.

L'Oréal contends that in the spring of 2016, "the Matrix brand was especially top-heavy,

and L'Oréal determined it needed to reorganize . . . the brand." Def.'s 56.1 Stmt. ¶ 37.  It further

asserts that "Plaintiff played a very peripheral and supervisory role," and that Ms. Gebhart thus

"determined that [Plaintiff's] role would be better served by using lower-level, lower-cost

employees to perform the tasks that Plaintiff was handling, rather than Plaintiff managing them

on the periphery."  *Id.*; *see also* Morales Decl. ¶ 12.  Peddy disputes L'Oréal's characterization

of the Matrix brand as top-heavy as well as its account of her role as peripheral.  Pl.'s 56.1 Stmt.

¶ 37.  She alleges that her "role was important and required her to create the vision for the new

Channel Development Marketing department, write the annual strategic plans for each customer,

develop merchandising with external partners and present directly to key executives to gain

approvals."  *Id.*  Indeed, in Peddy's 2015 performance review, Ms. Gebhart states, "This role in

Channel Development is an important role as the HUB of many counterparts, and I rely on

Christine to make the relationships function smoothly in order to deliver the business results."

Goldberg Decl. Ex. 55.

L'Oréal officially terminated Peddy on April 14, 2016.  Def.'s 56.1 Stmt. ¶ 39.  At the

time, Peddy was 46 years old.  *Id.*  Peddy was the only member of her team who was let go.

Pl.'s 56.1 Stmt. ¶ 153.  L'Oréal asserts that the decision to terminate Peddy was made by Ms.

Gebhart, along with Maria Morales, AVP for PPD's HR team, and Scott Brittingham, VP of

PPD's HR team.  Def.'s 56.1 Stmt. ¶ 38.  Mr. Brittingham was 56 years old at the time.  *Id.*

Peddy rightly points out that L'Oréal's account of who made the decision to fire her has changed

throughout the course of this litigation.  Pl.'s 56.1 Stmt. ¶ 38.  In its response to Peddy's first set

of interrogatories, L'Oréal stated that Farida Mercedes, AVP of HR within PPD, and Carol

3

Realson, VP of Human Resources for L'Oréal, made the decision to terminate her.  Goldberg

Decl. Ex. 39 ¶ 6.

L'Oréal asserts that following Peddy's termination, "Ms. Morales and Mr. Brittingham

worked closely with PPD trying to identify alternative opportunities for which Plaintiff could

apply."  Def.'s 56.1 Stmt. ¶ 41.  Peddy disputes this assertion and contends that no one at

L'Oréal—including Mr. Brittingham and Ms. Morales—discussed job opportunities with her

around the time of her termination.  Pl.'s 56.1 Stmt. ¶¶ 41, 155; Peddy Decl. ¶ 14.  Contrary to

L'Oréal's representation, Mr. Brittingham testified at his deposition that he did not email or call

anyone about possible positions for Peddy.  Brittingham Dep. 72:21-73:22 (Goldberg Decl. Ex.

5).  In Ms. Morales's declaration, she states, "Following Ms. Peddy's termination, I took great

effort to send Ms. Peddy's resume to other departments to see if there were any available

opportunities for her.  For instance, I spoke with Rona Singer, my peer at The Body Shop,

regarding an open position in which Ms. Peddy had expressed interest."  Morales Decl. ¶ 17.

Peddy asserts that no such email was ever produced during discovery.  Pl.'s 56.1 Stmt. ¶ 41;

Peddy Decl. ¶ 14.

In or around June 2016, Peddy applied to a VP/AVP of social media position with

Kiehl's.  Def.'s 56.1 Stmt. ¶ 136.  Mr. Killeen testified that the position was outside Peddy's area

of expertise and that she was thus rejected automatically.  *Id.* ¶ 136.  Peddy applied to over

fifteen additional positions at L'Oréal, but was not hired for any of them.  Pl.'s 56.1 Stmt. ¶ 159;

Goldberg Decl. Ex. 57.

### B. Peddy's June 1, 2016 Email

On June 1, 2016, Peddy sent an email to Sarah Hibberson, L'Oréal's Senior Vice

President ("SVP") for HR, and copied Emanuel Lulin, L'Oréal's Head of Ethics, and Fredric

Rozé, L'Oréal's CEO.  Def.'s 56.1 Stmt. ¶¶ 44-45; Savage Decl. Ex. N.  In it, she stated, "I

would like to raise a formal grievance concerning my sudden job elimination from L'Oreal on
April 14th. And I would like your help finding another position with L'Oreal so I can continue
my career with a company and brands that I love." Savage Decl. Ex. N.  Peddy described her
employment history, experience at L'Oreal, and positive performance rating.  *Id.*  She wrote, "I
was the only one affected by the reorg.  [Ms. Gebhart] said my position is not going away; rather
she wants to hire 2 younger people in my place.  I was told this has nothing to do with my
performance."  *Id.*  She asserted, "Given [that] I was just hired into this role less than a year ago
and told this was an expanding priority role/business area in need of more resources this 'reorg'
does not make sense."  *Id.*  She further stated, "I have applied for over 20 open positions with no
progress and it's going on two months now," and "[a]s a single mom and provider to my family,
this situation has created both stress and hardship and my salary and medical insurance has been
cut off." *Id.*  In closing, she wrote, "I am a very experienced professional and feel my age and
gender had something to do with this."  *Id.*

   After receiving Peddy's email, Mr. Rozé emailed his colleagues in HR on June 2, 2016,
"Sounds weird. Can you give me more context." Goldberg Decl. Ex. 13.  After Mr. Brittingham
replied with an explanation of the decision to eliminate Peddy's role, Rozé responded, "Not
l'Oreal's [sic] way of working... Let's find among all our openings a second chance opportunity
for this person. Keep me posted." *Id.*  On June 13, 2016, Mr. Rozé sent a follow-up email
asking, "Any news? Did we find a second chance role for her?"  *Id.*

### C. Peddy's Reinstatement With L'Oréal Professional

   On or about June 14, 2016, Peddy was reinstated as the AVP of Marketing for the
L'Oréal Professional ("LP") brand within PPD.  Def.'s 56.1 Stmt. ¶ 48.  She was paid her full
salary and benefits from her termination through reinstatement without any breaks in service. *Id.*
In her new position, Peddy worked in channel merchandizing to bring brands to life in specific

partner salons. *Id.* ¶ 50. She reported to Lisa Morris, General Manager of LP, who was 43 years old. *Id.* A few months after Peddy's reinstatement, Michelle Ryan, then 49, was hired as SVP of LP and became Peddy's immediate supervisor. *Id.* ¶ 52. L'Oréal asserts that neither Ms. Morris nor Ms. Ryan knew that Peddy had been terminated in April 2016 or reinstated in June 2016, *id.* ¶ 54, yet at Ms. Morris's deposition, she testified that she was aware through a conversation with Scott Brittingham that "they'd exited her from the company and that we're now looking for a new opportunity," Morris. Dep. 43:24-44:4 (Goldberg Decl. Ex. 3); *see also* Pl.'s 56.1 Stmt. ¶ 54.

Ms. Morris gave Peddy a "Meets Expectations" rating on her 2016 performance review. Def.'s 56.1 Stmt. ¶ 56; Savage Decl. Ex. L. At the time, Ms. Morris was 44 years old. Def.'s 56.1 Stmt. ¶ 56. She wrote that Peddy needed to "communicate better with marketing team on budgets and priorities," "gain a better understanding of . . . top LP salons and their business needs," and "ensure understanding of more premium high end salons and what merchandising pieces or business support would be appropriate . . ." Savage Decl. Ex. L. Ms. Ryan also gave Peddy a "Meets Expectations" rating on her 2017 performance review, but Peddy did not receive her 2017 rating because her position was eliminated. Def.'s 56.1 Stmt. ¶¶ 61-62; Savage Decl. Ex. O.

In a September 13, 2017 anonymous workplace questionnaire, Peddy wrote:

> Career advancement opportunities. To have a career you want to advance in the organization, and know that you can work towards a promotion and get it. There does not seem to be a fair process in place for this. You don't know about opportunities, or have a fair chance to be considered across divisions. They are not all posted. It seems to be based on who you know only. At each level, the required experience also widely varies which doesn't seem fair. Decision making and empowerment shouldn't be about cutting out layers which is often the senior people, to hire junior people. It should be about having the right balance to efficiently grow the business both strategically in an innovative way, and getting things done. Too many people are reporting into 1 senior individual at the moment

and it's not effective. This concern needs to be better looked at from all angles, and
levels of input.

Def.'s 56.1 Stmt. ¶ 95.

### D. Peddy's Second Termination

In or around April 2017, David Greenberg joined L'Oréal as PPD President and Antonio
Martinez-Rumbo joined as President of L'Oréal's Professional Products Brands.  Def.'s 56.1
Stmt. ¶ 63.  At the time, Mr. Greenberg was 47 years old and Mr. Martinez-Rumbo was 55 years
old.  *Id.*  L'Oréal asserts that "[a]s soon as they arrived, the PPD division went through a
management change exercise meant to de-layer the organization, encourage communication that
was more transparent and spark leadership transformation."  *Id.* ¶ 64.  L'Oréal further contends
that "this exercise was meant to address inefficiencies and poor performance found through the
division," and that "[i]n particular, LP's Selling, General and Administrative ('SG&A') expenses
were extremely high, especially given that LP had yet to turn a profit."  *Id.*  L'Oréal claims that
Ms. Mercedes and Ms. Morris were asked to create a mock-up of the planned reorganization for
the LP division, and that although their specific idea never moved forward, the overall
restructuring plan did.  Def.'s 56.1 Stmt.  ¶¶ 66, 68.  L'Oréal further alleges that Mr. Greenberg
and Mr. Martinez-Rumbo decided to eliminate redundant or unnecessary positions, and that
"they determined that the business would be better served if Plaintiff's position were
eliminated."  *Id.* ¶ 70.  Finally, L'Oréal contends that neither Mr. Greenberg nor Mr. Martinez-
Rumbo were aware of Peddy's age or her alleged protected activity at the time they decided to
terminate her.[3]  *Id.* ¶ 71.

---

[3] Peddy again points to L'Oréal's changing account of who made the decision to terminate her. Pl.'s 56.1 Stmt. ¶
70. In its response to Peddy's first set of interrogatories, L'Oréal asserted that Farida Mercedes and Carol Realson
made the decision to terminate Peddy in November 2017.  Goldberg Decl. Ex. 39 ¶ 8.  Moreover, when asked at his
deposition who "was involved the decision to terminate Christine in November of 2017," Mr. Brittingham said that
he and Ms. Morris were involved in addition to Mr. Greenberg and Mr. Martinez-Rumbo. Brittingham Dep. 93: 13-
25; 114:5-14. Peddy further asserts that "Brittingham was intimately involved in Peddy's complaint in June 2016 as

Peddy disputes L'Oréal's characterization of the reorganization and asserts that "PPD was in fact adding more layers" in 2017, including a new AVP of Training layer and a new VP of Sales layer within the LP brand. Pl.'s 56.1 Stmt. ¶ 64. Peddy also claims that around the time of her termination, the LP brand promoted various individuals within the marketing department. *Id.* ¶¶ 69, 171. She further maintains that PPD hired additional employees outside of the LP Brand, including two new Directors of Marketing for Redken, both of whom were under 40 years old. *Id.* ¶¶ 69, 166-67. Peddy also asserts that shortly after her termination, LP hired a new Director of Marketing, Steve Doan. *Id.* ¶ 69. Finally, Peddy claims that the "one and only financial document produced indicates that Finance budgeted 10 positions for the marketing department within L'Oréal Professional, even though they only had 8 filled." *Id.* ¶ 277.

L'Oréal asserts that prior to terminating Peddy and the other employees who were implicated in the reorganization, Ms. Mercedes reached out to all the HR group leaders in the organization to inquire about any available job opportunities. Def.'s 56.1 Stmt. ¶ 74. L'Oréal contends that other divisions were also undergoing reorganizations, and it was therefore difficult to place the impacted employees. *Id.* ¶ 75. Peddy claims that no such outreach emails were ever produced in discovery. Pl.'s 56.1 Stmt. ¶¶ 74-75.

Peddy was informed of her termination on November 14, 2017, when she was 47 years old. Def.'s 56.1 Stmt. ¶¶ 76-77; Pl.'s 56.1 Stmt. ¶ 165. Her responsibilities were subsequently split among other members of the LP team. Def.'s 56.1 Stmt. ¶ 82. L'Oréal asserts that at the time it eliminated Peddy's position, it also eliminated the positions of eight other employees, including Ms. Ryan and the entire customer care organization. Def.'s 56.1 Stmt. ¶ 72. Ms.

---

Rozé admonished him specifically for not abiding by company policy after Rozé received Peddy's complaint." Pl.'s 56.1 Stmt. ¶ 71. Accordingly, she argues that L'Oréal's assertion that Mr. Greenberg and Mr. Martinez-Rumbo decided to terminate her—and that they were both unaware of her age and prior complaint—is an "attempt to dodge liability by naming individuals other than those in PPD Human Resources." *Id.*

Mercedes testified that Peddy's job performance did not play any role in the decision to terminate her. Mercedes Dep. at 198:20-22 (Savage Decl. Ex. B).

L'Oréal provided Peddy with a Reduction in Force ("RIF") document labeled "Older Workers Benefit Protection Act Information Relating to Workforce Restructuring: Professional Products Division." Pl.'s 56.1 Stmt. ¶¶ 72, 173; Goldberg Decl. Ex. 16. According to the RIF document, ten out of 486 employees in PPD had been selected for termination, all of whom over 40 years old. Goldberg Decl. Ex. 16. L'Oréal asserts that after the November 2017 RIF, 200 employees age 40 and older remained in the PPD division, and 254 employees under age 40 remained. Def.'s 56.1 Stmt. ¶ 83. L'Oréal further contends that 126 of those who remained were older than Peddy. Id.

Peddy takes issue with the RIF document for multiple reasons. She claims that the number of employees listed on the RIF document does not accurately reflect the number of employees in PPD, and that at least one employee on the RIF decided to retire and was not terminated. Pl.'s 56.1 Stmt. ¶¶ 72, 175-179. Moreover, she characterizes the "relevant subgroup" as the employees in the Marketing Division, and asserts that after she and another Marketing employee over 40 were terminated, 86% of the Marketing employees were under 40. Id. ¶ 83.

L'Oréal contends that following the RIF, it implemented a division-wide hiring freeze. Def.'s 56.1 Stmt. ¶ 73. Peddy disputes that any such freeze occurred, pointing to the fact that PPD advertised its new hires during the fourth quarter of 2017. Pl.'s 56.1 Stmt. ¶ 73; Goldberg Decl. Ex. 75. Peddy also claims that L'Oréal promoted some Marketing employees around the time that she was terminated. Pl.'s 56.1 Stmt. ¶¶ 186-89.

On December 7, 2017, after Peddy had already been informed of her termination, Mr.

9

Brittingham discussed Peddy in a meeting with Mr. Greenberg, Mr. Rozé, and another colleague. Brittingham Dep. 121:2-21. Mr. Brittingham testified, "I wanted Frédéric to be aware that, as part of the RIF, Christine's position had been impacted so that in the event that she were to reach out again, he would be aware and to make sure that he was in line with our decision to move forward." *Id.* 121:23-122:5.

### E. Peddy's Internal Job Search Prior to Her Last Day

After learning of her termination but before her last day, Peddy began looking for other available positions at L'Oréal. On November 16, 2017, Peddy applied for an AVP of Key Accounts position with Kiehl's through L'Oréal's internal job posting site and submitted her resume to Keith Levetin, VP of HR for Kiehl's.[4] Pl.'s 56.1 Stmt. ¶¶ 103, 259; Peddy Decl. ¶¶ 34-35. She asserts that once she applied to the Kiehl's position, she could not apply for a second position because L'Oréal's internal job posting site restricts internal employees to applying for one job at a time. Pl.'s 56.1 Stmt.¶ 102; Peddy Decl. ¶ 38.

On November 17, 2017, Ms. Mercedes emailed Peddy to ask whether she had decided to stay at L'Oréal through December 31, 2017. Def.'s 56.1 Stmt. ¶ 100; Savage Decl. Ex. T. On November 20, 2017, Peddy responded, "I would like to stay with L'Oréal for the long-term and be transitioned to a new role within the company by the end of the year. I am flexible as to the opportunity and division." Savage Decl. Ex. T. Later that day, Ms. Mercedes encouraged Peddy to apply to open positions through L'Oréal's career site and offered to "help facilitate the interview with the HR partner recruiting for the role." *Id.*

Peddy contacted Ms. Mercedes regarding the Kiehl's position on November 21, 2017. Pl.'s 56.1 Stmt. ¶ 103; Savage Decl. Ex. U. On November 28, 2017, Ms. Mercedes responded to

---

[4] L'Oréal sometimes refers to the VP of HR for Kiehl's as "Keith Levetin" and sometimes refers to him as "Keith Levitan." For the sake of consistency, the Court refers to him as "Keith Levetin."

Peddy that she would provide Mr. Levetin with "any information he might require to consider [Peddy's] candidacy" for the Kiehl's role. Savage Decl. Ex. U. She also wrote, "If there is another role you are interested in [while] you are in consideration for the Kiehl's role, please let me know and I will try to facilitation a conversation." *Id.*; Def.'s 56.1 Stmt. ¶ 104. On December 7, 2017, Ms. Morris met with Peddy to discuss her goal of remaining with the Company. *Id.* ¶ 105. Peddy asked repeatedly for someone to help shepherd her through the job process. *Id.* On December 11, 2017, Ms. Mercedes contacted Peddy to inform her that she had contacted Mr. Levetin and was "waiting to hear back." *Id.* ¶ 106. Mr. Levetin told Ms. Mercedes that Peddy would be considered for the role, but that other candidates were also under consideration. *Id.* In or around November or December 2017, the Kiehl's position was downgraded from an AVP position to a Director-level position for budgetary reasons. *Id.* ¶¶ 106, 137; Pl.'s 56.1 Stmt. ¶¶ 106, 137; Levetin Decl. ¶ 4.

On December 14, 2017, Peddy interviewed for the Kiehl's Key Accounts position with Tory Diamond, the hiring manager. Def.'s 56.1 Stmt. ¶¶ 107, 137. Ms. Diamond stated in an email to Mr. Levetin that Peddy "had great experience and definitely seemed very smart, but she was truly a marketer." Goldberg Decl. Ex. 45. Even though Ms. Diamond thought Peddy "could do the job," she felt "the learning curve to this position would be quite steep," and accordingly ranked Peddy third after two other candidates whom she had interviewed. *Id.* Ms. Diamond's first-choice candidate withdrew her application and Mr. Levetin determined that the second-choice candidate was overqualified. Levetin Decl. ¶¶ 8-9. In or around January 2018, after the position had already been downgraded to a Director-level position, Shannon Vandette applied. Def.'s 56.1 Stmt. ¶ 137. Ms. Vandette, who was 27 years old, had previously worked for John Hardy in field sales and at Clinique as an account manager. Def.'s 56.1 Stmt. ¶ 137; Pl.'s 56.1

Stmt. ¶ 264. L'Oréal asserts that Ms. Vandette was "a better candidate for the position" than Peddy, Def.'s 56.1 Stmt. ¶ 107, but Peddy claims that Ms. Vandette lacked the minimum experience required by the job posting, Pl.'s 56.1 Stmt. ¶ 107. Mr. Levetin states in his declaration that he believed that Ms. Vandette "would be a great fit for our team, but we did not feel that she was ready for a Director role, nor did we absolutely need a Director for this job," so he offered the position to her at a Manager level. Levetin Decl. ¶ 12. On January 29, 2018, Kiehl's also hired Renata Bruxel, then 28 years old, into a Director-level role. Pl.'s 56.1 Stmt. ¶¶ 267-270. Ms. Bruxel had previously worked in a Director-level role at the Body Shop. Def.'s 56.1 Reply ¶¶ 267, 270.

On December 18, 2017, Ms. Mercedes emailed Alexandra Murtha, an HR representative in the Active Cosmetics Division ("ACD") stating, "I need a favor." Goldberg Decl. Ex. 49. Ms. Mercedes asked if someone in ACD would "be able to have a conversation with [Peddy] as consideration for any potential viable roles." *Id.* Ms. Murtha met with Peddy on December 21, 2017, after which she emailed Ms. Mercedes saying, "I had a great conversation with Christine today. I think she is a great fit for marketing and or sales as she expressed interest in sales as well." Goldberg Decl. Ex. 50. L'Oréal asserts that there were no available positions in ACD for which Peddy was a suitable candidate. Def.'s 56.1 Stmt. ¶ 108. Peddy disputes this assertion and claims that she applied for a National Accounts team position for which Ms. Murtha had told her there may be an opening, but that no one contacted her about the role. Pl.'s 56.1 Stmt. ¶ 108.

Ms. Mercedes also set up an exploratory meeting for Peddy with an HR Director, Grace Ryu, in the Luxe Division on December 20, 2017. *Id.* ¶ 110. Peddy alleges that the meeting occurred on Ms. Ryu's last day before moving to California, and that she was not given an opportunity to interview further in the Luxe Division. *Id.*

12

In late December, Peddy, Ms. Mercedes and Ms. Realson met to discuss Peddy's severance agreement. Def.'s 56.1 Stmt. ¶ 110. At the meeting, Ms. Mercedes discussed her attempts to help Peddy find alternative employment within L'Oréal. *Id.*

On January 3, 2018, Sandra Digrazio emailed Peddy, copying Ms. Mercedes and Ms. Realson, to confirm that her last day of employment was December 31, 2017 per her severance agreement. *Id.* ¶ 111; Savage Decl. Ex. Z. That same day, Peddy responded:

> I would like to understand what is the transition plan for me as an impacted internal employee who would like assistance to move to another open role within L'Oreal? I was in the middle of actively interviewing internally for open roles, with every division saying I would be a great fit and am now being cut off. As you know, I want to stay with the company and additionally would not want a break in service. Will you be coordinating this transition for me through the HR teams?

Savage Decl. Ex. Z. Ms. Reason replied, "We are not in any way cutting you off from that process. We are still waiting for the brands you were meeting with to go through the rest of their interview process in order to provide any feedback which is expected mid-Jan." *Id.* She also stated, "[W]e have provided you with assistance over the past few weeks and advised you can still interview with L'Oreal for any other future positions (outside of the ones you have currently interviewed for) but as an external candidate after the 12/31 date." *Id.* Peddy responded, "By making me an external employee it makes it a lot harder for me, and puts me at a disadvantage vs. being an internal employee for a new role." *Id.* She further wrote, "I thought I would still be a current employee while transitioning to a new role." *Id.* Finally, she noted that her meetings with Ms. Ryu in the Luxe Division and Ms. Murtha in ACD occurred just before the holidays, but that "both said [she] would be a great fit." *Id.* Peddy thus asked if Ms. Realson would "be setting up the meetings with the hiring managers . . . as the next step." Ms. Mercedes replied:

> While you are not an active employee of the organization, it does not change your candidacy. As you know while there are 90+ opportunities within the organization, you may not be a viable fit for many [of] them due to experience and transferable

13

skills. As your HR business Partners we actively presented you to divisions that had potential opportunities that would fit your skill set. Please understand that other candidates are also being considered. If you are in strong consideration for a role, the divisional HR team will inform us of their interest and we would absolutely facilitate the interviews for you.

*Id.*

### F.  Peddy's Applications for Reemployment

Following Peddy's termination, she applied to between 15 and 30 positions at L'Oréal. Def.'s 56.1 Stmt. ¶ 127; Pl.'s 56.1 Smt. ¶ 127. While some of the positions were at the AVP level—the same level as Peddy's prior positions at Matrix and L'Oréal Professionals—others were at the Senior Manager-level, Director-level or were digital specialist roles or retail positions, all of which were considered lower in rank than Peddy's prior AVP roles. Def.'s 56.1 Stmt. ¶¶ 12, 133. L'Oréal asserts that "[g]enerally, Talent Acquisition does not consider hiring a former L'Oréal employee into a role which is lower in rank than the position the former employee held." *Id.* ¶ 134. Peddy disputes the accuracy of this assertion and points to two instances in which she alleges that L'Oréal hired former VPs into lower-ranked AVP positions. Pl.'s 56.1 Stmt. ¶¶ 134, 248. L'Oréal contends that one of those former VPs, Michelle Ryan, was not rehired as an AVP, but rather left for maternity leave, returned as a consultant for a year, and then transitioned into a fulltime position as an AVP. Def.'s 56.1 Reply ¶ 248.

Mr. Killeen was responsible for hiring for a number of the positions to which Peddy applied. Killeen Decl. ¶ 7. Mr. Killeen testified that he was never instructed by anyone at L'Oréal not to hire Peddy. Killeen Dep. 116:17-19, 17:8-1; Killeen Decl. ¶ 8. He also asserts in a sworn declaration that age played no part in his decision-making process, and that he had no knowledge of Peddy's age or alleged protected activity at the time he was considering her applications. Killeen Decl. ¶¶ 16-18. Peddy disputes these assertions in light of the fact that Mr. Killeen testified that he learned in an HR meeting that Peddy had been terminated, Killeen Dep.

42:15-23, and L'Oréal maintained Peddy's age on multiple HR documents, Pl.'s 56.1 Stmt. ¶ 123.

For the sake of clarity, the Court reviews Peddy's Senior Manager and Director-level, AVP-level, and VP-level applications separately.

### 1. Peddy's Applications for Senior Manager-Level or Director-Level Positions

In or around January 2018, Peddy applied for a Director of Social Media position at Kiehl's. Def.'s 56.1 Stmt. ¶ 139. L'Oréal ultimately hired Sarah Jung, who had prior experience as a Global Digital Marketing and Social Media Manager for L'Oréal's Luxe division. *Id.*

In or around February 2018, Peddy applied for a Senior Manager position for e-Retail and National Accounts for L'Oréal's Ulta brand. *Id.* ¶ 140. Sixty-four other candidates applied for the position. *Id.* L'Oréal hired Lauren Tamplin, a former E-commerce Manager for L'Oréal. *Id.*

In or around March 2018, Plaintiff applied for a Director of Marketing position for L'Oréal's Carol's Daughter brand. *Id.* ¶ 141. Over 200 other applicants applied for the position. *Id.* L'Oréal hired Monique Salas for the position, who was 29 years old at the time. *Id.*; Pl.'s 56.1 Stmt. ¶¶ 229-33. Mr. Fennel was responsible for recruiting for the position and testified that he could not recall why he did not give Peddy an interview or why Ms. Salas was ultimately selected over Peddy. Pl.'s 56.1 Stmt. ¶¶ 234-36. Although Mr. Killeen was not responsible for recruiting for the position, he testified, "So first and foremost, this is a director position. My memory serves that what they also needed was somebody who was early on in their tenure as a director. They wanted somebody who could grow within this position for a while before looking for a promotion." Killeen Dep. 99:8-14; *see also* Def.'s 56.1 Stmt. ¶ 141. Peddy disputes this characterization and points to the fact that the job posting lists "7+ years of Industry related

marketing work experience (consumer package goods and beauty)" as a qualification. Pl.'s 56.1

Stmt. ¶ 141; Goldberg Decl. Ex. 27. Peddy asserts that Ms. Salas's entire experience prior to

L'Oréal had been in the food industry, and that in contrast to Peddy, she lacked any beauty

experience. Pl.'s 56.1 Stmt. ¶ 141.

 In or around March 2018, Peddy applied for a Director of Marketing position for

L'Oréal's Soft Sheen Carson brand. Def.'s 56.1 Stmt. ¶ 142. The position went to Melissa

Hughes, a 27- or 28-year old applicant who had worked as a brand manager at Henkel. *Id.*;

Def.'s 56.1 Reply ¶ 224. Mr. Fennel was responsible for recruiting for the position and testified

that he could not recall why he did not select Peddy for an interview or why Ms. Hughes was

selected over Peddy. Pl.'s 56.1 Stmt. ¶¶ 225-26. Mr. Killeen testified, "[M]y assumption would

be that, again, they were looking for somebody who was being promoted into the director role.

Sometimes teams do this when they want to make sure they have somebody who can grow, it

could be a salary thing, it could be a number of different reasons." Killeen Dep. 103:9-16.

Peddy again disputes this characterization on the grounds that job posting lists "7+ years of

Industry related marketing work experience (consumer package goods and beauty)" as a

qualification, and Hughes had approximately five years of experience. Pl.'s 56.1 Stmt. ¶ 142;

Goldberg Decl. Ex. 41.

 In or around April 2018, Peddy applied for a Director of Brand Marketing position with

L'Oréal's Redken brand. Def.'s 56.1 Stmt. ¶ 143. L'Oréal states that over 60 other applicants

applied for the position. *Id.* L'Oréal hired Jennie Morel, a 35- or 36-year old applicant who

previously worked as a senior brand manager and had a traditional consumer goods background.

*Id.*; Def.'s 56.1 Reply ¶ 217. Mr. Fennell, who led recruiting for the position, could not recall

why Ms. Morel was selected for the position over Peddy. Pl.'s 56.1 Stmt. ¶ 219. Mr. Killeen

testified, "I can assume that this is another situation where . . . we're looking for somebody who we can promote into this role, look to develop them over time." Killeen Dep. 124:4-8. Peddy contends that Ms. Morel did not meet the minimum job requirements, as she had approximately five years of experience and the position required eight to ten years of experience. Pl.'s 56.1 Stmt. ¶ 143.

In or around April 2018, Peddy applied for a Director of Marketing position for L'Oréal's La Roche-Posay brand. Def.'s 56.1 Stmt. ¶ 144. L'Oréal promoted Sarah Berman, a 26-year old candidate who had been working as a Manager at La Roche-Posay, into the Director-level position. *Id.*; Def.'s 56.1 Reply ¶ 254. L'Oréal contends that Ms. Berman was not given preference as an internal candidate. Def.'s 56.1 Stmt. ¶ 144. Mr. Fennell, who led recruiting for the position, could not recall why Ms. Berman was selected for the position. Pl.'s 56.1 Stmt. ¶¶ 255-56.

On April 11, 2018, Peddy applied for a Director of Marketing position with the LP brand, for which Mr. Killeen had recruiting responsibility. Def.'s 56.1 Stmt. ¶ 128. L'Oréal contends that 136 individuals applied for the position. *Id.* Plaintiff was rejected from the position in an April 12, 2018 email in which was told that "the position had already been filed." *Id.*; Pl.'s 56.1 Stmt. ¶ 128. On or about May 25, 2018, Mr. Killeen hired Steve Doan for the position, who was 31 or 32. Def. 56.1 Reply ¶ 243. At his deposition, Mr. Killeen testified:

> [T]here was a strategy put forward to look at spirits profiles for the Professional Products Division due to synergies with the business model because just like in the Professional Products Division, people in the spirits or liquor industry sell through distributors, they have to influence sommeliers and bartenders, which are kind of akin to stylists or salon owners. They also sell through retail via liquor stores and things like that similar to SalonCentric for us . . . So Steve is somebody we contacted, along with a number of other profiles from spirits prior to this role ever coming open. I think we were in contact with Steve for months before this role even existed.

17

Killeen Dep. 104:13-105:12 (Savage Decl. Ex G).  Steve Doan did not have any prior experience working in beauty consumer goods.  Pl.'s 56.1 Stmt. ¶ 242.  Peddy contends that Doan was offered practically the same starting salary that Peddy had previously received—$153,000 compared to her starting salary of $155,00.  *Id.* ¶ 249.

Peddy contends that she also applied to be a Director of Trade Marketing for Sephora on L'Oréal's Kerastase brand, although she does not specify an application date and L'Oréal asserts that Talent Acquisition has no record of her application.  Pl.'s 56.1 Stmt. ¶ 131; Def.'s 56.1 Stmt. ¶ 131.  Mr. Killeen testified that at the time of hiring, Kerastase was about to launch in a consumer retail market at Sephora, and so he sought a candidate for the role who had experience working with Sephora.  Def.'s 56.1 Stmt. ¶ 131.  On October 1, 2018, he hired Sarah Battle, who had previously worked at a competitor brand where she focused on Sephora retail strategy.  *Id.*

At an unspecified date, Peddy also applied to a Director of Custom Marketing position. Def.'s 56.1 Stmt. ¶ 145.  L'Oréal hired Kelly-May Cavalier for the position in light of her trade marketing background at Coty, a direct competitor of L'Oréal's.  *Id.*

### 2.  Peddy's Applications for AVP-Level Positions

Peddy applied for at least two other AVP positions in addition to the AVP Key Accounts position at Kiehl's for which she applied before her last day at L'Oréal.  *See supra* Section I.E. In or around October 2018, Peddy applied for an AVP of Retail Customer Experience position. Def.'s 56.1 Stmt. ¶ 132.  Over 95 other applicants applied for the role.  *Id.*  L'Oréal asserts that the "position required the successful applicant to serve as the link between digital marketing and retail, and to act as the liaison between brick and mortar stores and L'Oréal's online marketplace."  *Id.*  Megan Leisinger, a previous Brand Director for Nike, was hired for the position due to her experience working across the Nike Direct-to-Consumer business, including working on apps, customer relationship management, communications, and brick and mortar

event strategies.  *Id.*

In or around June 2019, Peddy applied for an AVP of Marketing position with L'Oréal's

Giorgio Armani Fragrance brand.  Def.'s 56.1 Stmt. ¶ 130.  Over 200 candidates applied for the

position.  *Id.*  Mr. Killeen recruited for the role and testified that he sought a candidate who had

current expertise in the luxury fragrance industry.  *Id.*; Killeen Dep. 135:4-10.  He decided to

hire Gwenola Gindre who had "essentially spent her entire career in the luxury fragrance space"

and thus had a "very attractive profile" for the position.  Killeen Dep. 135:10-14.

### 3.    Peddy's Applications for Vice President-Level Positions

Peddy also applied to several Vice President-Level positions that were ranked higher than

her previous AVP positions.  Def.'s 56.1 Stmt. ¶ 146.  Ms. Ryan testified that she did not think

Peddy was qualified for a Vice President-Level position "at that moment," because she needed to

"show that [she] could run the business and manage the numbers and the execution, as well as

the strategy."  Ryan Dep. 25:17-25.  Peddy disputes that she was not qualified for a Vice

President-Level position and asserts that Ms. Ryan and Ms. Mercedes had approved Peddy to

interview for Vice President-Level roles in August 2017.  Pl.'s 56.1 Stmt. ¶¶ 146, 163.  Peddy

cites an August 24, 2017 email exchange in which she informs Ms. Ryan and Ms. Mercedes

about an anticipated meeting with the Luxe team, to which Ms. Mercedes responded, "Great

News," and Ms. Ryan offered to "help coach [Peddy] on the interview."[5]  Goldberg Decl. Ex. 61.

In or around January 2018, Peddy applied for a Vice President of Digital position for the

IT Cosmetics division.  Def.'s 56.1 Stmt. ¶ 147.  L'Oréal, however, hired Karan Soni, who it

contends had a strong digital and retail background from prior roles at Walmart and Amazon and

who had led e-commerce strategy in L'Oréal's CPD division.  *Id.*

---

[5] Although it is not clear from the face of the August 24, 2017 email exchange that the Luxe role was at the VP
level, the parties do not appear to dispute this fact.

In or around March 2018, Peddy applied to be the Vice President of Global Marketing for Ralph Lauren. *Id.* ¶ 148. L'Oréal asserts that ultimately, no one was hired for the position due to changes in the Ralph Lauren leadership team that caused the team to reevaluate the needs of the business. *Id.*

### G. Peddy's Attorney's Letter and Lisa Morris's Memo

On March 8, 2018, Peddy's attorney wrote a letter to Mr. Rozé regarding Peddy's termination. Goldberg Decl. Ex. 38. The letter requested that Peddy be reinstated into an open position within the company. *Id.* It also stated:

> Ms. Peddy was told that her AVP of Marketing role on L'Oreal Professional was eliminated due to the business situation and had nothing to do with her job performance. However, this seems illogical as the company is currently recruiting for a new Director and Manager of Marketing on L'Oreal Professional. Additionally, the company appears to be recruiting for various new positions including a new A VP Brand & Sales position.

*Id.* The letter further asserted that Peddy "did not receive support from human resources," but that she "knows various other younger colleagues who have been directed and guided into other roles when their positions had been terminated." *Id.*

On March 14, 2018, Ms. Morris sent a memo to Ms. Mercedes describing the "Marketing Role Responsibilities for both Manager and Director and the difference between the AVP Marketing – Merchandising, Education and Customer Loyalty role as well as comments on Christine Peddy's performance." Goldberg Decl. Ex. 34. In the memo, Ms. Mercedes stated that she "found [Peddy] unable to bring a strategic point of view or design business strategies without repeated feedback and guidance." *Id.* She also asserted that "Christine did not show financial acumen and analytics." *Id.* Finally, she claimed that "[m]anaging people is a concern for Christine as although she did not manage people we had several incidents where cross-functionally she did not communicate and liaise with cross-functional members in an appropriate

manner and this was discussed with her." *Id.*

### H.  L'Oréal's Transfer or Rehiring of Other Employees Whose Positions Were Eliminated

Although L'Oréal asserts that it "does not have a policy requiring the Company to redeploy employees impacted by a position elimination," Def.'s 56.1 Stmt. ¶¶ 114, it has a policy entitled "Responsible Restructuring Policy" that provides:

> Any decision likely to affect the job and working life of employees is taken only after careful consideration. Our values of respect and integrity guide us in such situations. We communicate in a clear and regular manner to make sure that our employees are fully informed and ensure an ongoing dialogue with our employees and staff representatives. When redundancies prove unavoidable, we aim to maintain employment by supporting employees in their professional reorientation, in particular through internal redeployment or solutions adapted to each individual situation.

Pl.'s 56.1 Stmt. ¶ 154; Goldberg Decl. Ex. 11.  L'Oréal contends that "[w]hether an employee is redeployed depends on a number of situations including whether there are other openings at that level, whether other restructurings are occurring at the same time, and whether there are performance issues with the employee." Def.'s 56.1 Stmt. ¶ 115.

L'Oréal also asserts that it "does not have a policy requiring that an internal candidate be hired over an external candidate if both were to apply for the same position." *Id.* ¶ 121.  At Ms. Mercedes' deposition, however, she testified that "the company's ideal is that we promote within," and that if all criteria were equal between an internal and external candidate, "the expectation would be that we would hire the internal candidate." Pl.'s 56.1 Stmt. ¶ 121; Mercedes Dep. 32:22-23, 33:4-12.  Mr. Brittingham testified that he has never approved a transfer for an employee to move into a different type of function simply because they have an interest in trying to broaden their resume. Def.'s 56.1 Stmt. ¶ 122.

L'Oréal has transferred or rehired a number of other, younger employees whose positions were eliminated.  For example, Peddy's first supervisor, Ms. Lam, obtained a VP role with PPD.

Def.'s 56.1 Stmt. ¶ 117. Zachary Tod Rosenkoetter was terminated and then rehired after he

applied to be a Territory Manager as an external candidate.[6]  Id.  Ms. Murtha transitioned into an

open HR position in the ACD division following the closure of The Body Shop.  Id.  Melissa

Davis, an AVP of Marking in LP, was transferred to an AVP role in Matrix.[7]  Pl.'s 56.1 Stmt. ¶

197.  Christelle Michelet and Yvhan Martin also obtained other positions within L'Oréal.  Id. ¶¶

192-94.  After Christine Kennally expressed an interest in moving to Italy for personal reasons,

Ms. Mercedes facilitated a discussion between her and Caroline Visconti, a manager of

international mobility, and Ms. Kennally was offered a position in Italy.  Def.'s 56.1 Stmt. ¶ 117.

Similarly, Karla Duffner was rehired into an AVP marketing role after she moved to London.

Pl.'s 56.1 Stmt. ¶ 207.

L'Oréal asserts that "[I]f a L'Oréal employee were to be considered for any role in the

marketing department, he or she would have to be deemed a high-potential talent," and that

"Plaintiff was not considered a high-potential talent."  Id. ¶¶ 118-19.  Plaintiff disputes that she

was not considered a high-potential talent in light of the fact that she was awarded a

performance-based bonus every year that she worked at L'Oréal and her managers consistently

gave her high priority projects.  Pl.'s 56.1 Stmt. ¶¶ 119, 151.  Mr. Killeen, Ms. Mercedes, and

Matt Fennell, who reported to Mr. Killeen, all contend that they were never told not to consider

Peddy for any roles.  Def.'s 56.1 Stmt. ¶¶ 123-25.

### I.  Peddy's Deposition Testimony

At Peddy's deposition, she was asked "During the time that you worked at L'Oréal, from

May 2015 to December 2016, did anybody make any derogatory comments to you about your

---

[6] Peddy asserts that Rosenkoetter was an internal transfer, not an external candidate, as he was described as an internal transfer in a New Hires and Transfers Newsletter.  Pl.'s 56.1 Stmt. ¶ 117; Goldberg Decl. Ex. 71.
[7] The parties dispute whether Ms. Davis's position in LP was eliminated, or whether her position was backfilled while she took an extended maternity leave.  Pl.'s 56.1 Stmt. ¶ 197.; Def.'s 56.1 Reply ¶ 197.

age?" Peddy Dep. 94:10-13 (Savage Decl. Ex. A).  Peddy responded that Candy Gebhart had done so.  *Id.* at 95:3.  When asked if she could remember any specific comments that she considered derogatory on account of her age, Peddy replied, "Not specifically, no." *Id.* at 95:12-17.  When asked whether there was "anybody else other than Candy Gebhart," Peddy responded, "No." *Id.* at 95:18-22.  Peddy testified that Mr. Brittingham "was not very nice" to her and "was furious" that she had written to Mr. Rozé and Ms. Hibberson in 2016, but she did not mention any age-related comments.  *Id.* at 260:22-261:14.  Peddy also admitted that she did not raise any complaints to management or HR regarding her belief that she was being treated differently because of her age between the time of her reinstatement in June 2016 and her termination in November 2017.  Def.'s 56.1 Stmt. ¶ 90; Peddy Dep. 241:16-242:5.

## II.   Procedural History

After receiving notice of her right to sue from the Equal Employment Opportunity Commission, Peddy filed the Complaint in this action on August 17, 2018, asserting claims for age discrimination and retaliation in violation of the ADEA, the NYSHRL, and the NYCHRL. Dkt. 1.

After the parties completed discovery, Defendant filed the instant motion for summary judgment on February 20, 2020. Dkt. 66.  Plaintiff opposed Defendant's motion on April 16, 2020, Dkt. 82, and Defendant replied in support of its motion on May 14, 2020, Dkt. 91.  The Court held oral argument on June 19, 2020.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citations omitted). To survive summary judgment, "a plaintiff must provide more than conclusory allegations . . . and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 101 (2d Cir. 2010) (internal quotation marks and citation omitted). In deciding such a motion, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *CILP Assocs., L.P. v. Price Waterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation and alteration omitted).

## DISCUSSION

### I.   ADEA Discrimination Claim

Peddy first argues that she was subject to unlawful age discrimination in violation of the ADEA. This claim is subject to the familiar burden-shifting standard set forth in the *McDonnell Douglas* case. *See Gorzynski*, 596 F.3d at 105-06 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973)). To establish a prima facie case of age discrimination, "a claimant must demonstrate that: 1) [s]he was within the protected age group; 2) [s]he was qualified for the

position; 3) [s]he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Gorzynski*, 596 F.3d at 106-07.

"[O]nce a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." *Terry*, 336 F.3d at 138 (citing *McDonnell Douglas*, 411 U.S. at 802). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Gorzynski*, 596 F.3d at 106. To establish that the employer's proffered nondiscriminatory rationale is pretextual, the plaintiff "'must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009)); *see also Chapotkat v. Cty. of Rockland*, 605 F. App'x 24, 26 (2d Cir. 2015).

### A. Plaintiff's Prima Facie Case

When the events in question occurred, Peddy was over 40 years old and thus clearly establishes the first prong of her prima facie case. *See* Def.'s Rule 56.1 Stmt. ¶¶ 39, 77; *Gorzynski*, 596 F.3d at 107.

In addition, Peddy was qualified for at least some of the positions to which she applied after her termination. For example, Tory Diamond, who interviewed Peddy for the Kiehl's Key Accounts position, wrote that Peddy "had great experience," "definitely seemed very smart," and "could do the job," even though "the learning curve to this position would be quite steep." Goldberg Decl. Ex. 45. Similarly, in light of Peddy's experiences as an AVP of Marketing with L'Oréal's Matrix and LP brands, as well as her MBA and prior experience at Revlon, she was

25

qualified for the AVP of Marketing position with L'Oréal's Giorgio Armani Fragrance brand. Peddy has therefore established the second prong of her prima facie case.

In her opposition brief, Peddy states that she "is not arguing that L'Oréal used poor business judgment in discharging her but rather that Defendant's subsequent action of not redeploying her was discriminatory." Pl.'s Opp. at 31. At oral argument, Peddy's counsel reiterated that the alleged "adverse action" at the heart of Peddy's discrimination claim is L'Oréal's refusal to transfer or rehire Peddy, not L'Oréal's decision to terminate her in the first instance. See June 19, 2020 Tr. at 33:14-16 ("[T]he age discrimination claim is not about the RIF itself, but the fact that they did not redeploy her or make any effort to redeploy her"). The rejection of an employment application can constitute an "adverse action," and Peddy has thus established the third prong of her prima facie case. See McDonnell Douglas, 411 U.S. at 802.

The Court next assumes, without deciding, that Peddy could establish the fourth prong of her prima facie case—that the adverse action occurred under circumstances supporting an inference of age discrimination. See Nixon v. TWC Admin. LLC, No. 16-CV-6456 (AJN), 2019 WL 1428348, at *7 (S.D.N.Y. Mar. 29, 2019) (assuming arguendo that Plaintiff establishes prima facie case as the "burden is not a heavy one" under Second Circuit case law); Idrees v. City of New York, 04 Civ. 2197(LAK)(GWG), 2009 WL 142107, at *9 (S.D.N.Y. Jan. 21, 2009) ("Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action.").

### B. Defendant's Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment and for Refusing to Rehire Her

Assuming, as the Court has, that Peddy has established her prima facie case, the burden

shifts to L'Oréal to provide a legitimate, non-discriminatory reason for its actions. *Terry*, 336
F.3d at 137–38. "While the defendant's burden is 'one of production, not persuasion' and
therefore this court cannot undertake a credibility assessment, the defendant must offer evidence
sufficient for the trier-of-fact to conclude that the proffered reason was the actual cause of the
complained of adverse action." *Id.* at 144 n.17 (quoting *Reeves v. Sanderson Plumbing
Products, Inc.*, 530 U.S. 133, 142 (2000)). L'Oréal argues that it had a legitimate, non-
discriminatory rationale for terminating Peddy in November 2017—its financially-driven
reduction in force. Def.'s 56.1 Stmt. ¶¶ 69-70. As described above, Peddy does not appear to
argue that her termination was discriminatory or that L'Oréal's proffered reason for terminating
her was pretextual. Instead, Peddy's discrimination claim focuses on L'Oréal's rejection of her
applications for transfer or reemployment. Pl.'s Opp. At 31; June 19, 2020 Tr. at 33:14-16.

L'Oréal argues that it had legitimate, non-discriminatory reasons for rejecting Peddy's
various applications for reemployment—its selection of better-qualified candidates. Def.'s 56.1
Stmt. ¶¶ 127-148. "Courts afford employers a great deal of discretion in assessing the
credentials and qualifications of applicants and in determining the criteria for positions."
*Simmons v. City of New York*, No. 16-CV-1589 (VEC), 2017 WL 6397745, at *15-16 (S.D.N.Y.
Dec. 13, 2017) (internal quotation marks and citations omitted). Accordingly, L'Oréal's
"decisions regarding the professional experience and characteristics sought in a candidate, as
well as [L'Oréal's] evaluation of Plaintiff's qualifications, are entitled to deference." *O'Leary v.
N.Y. State Unified Court Sys.*, No. 05-CV-6722 (HB), 2007 WL 2244483, at *7 (S.D.N.Y. Aug.
6, 2007) (internal quotation marks and citations omitted). "The Court's role is not to evaluate the
wisdom of personnel decisions, but merely to determine whether the decisions were rational and
non-discriminatory." *Id.* (internal quotation marks and citations omitted).

Peddy applied to between 15 and 30 positions at L'Oréal following her November 2017 termination. Def.'s 56.1 Stmt. ¶ 127 (stating that Peddy applied to over 30 positions since her November 2017 termination); Pl.'s 56.1 Smt. ¶ 127 (stating that only 15 of the positions cited by L'Oréal are ones that Peddy applied to following her November 2017 termination, and that 17 are ones she had applied to back in 2015 and 2016). As recounted above, L'Oréal provided an explanation as to why it selected a candidate other than Peddy for each of these positions. *See supra* Sections I.E-F.

Many of the positions for which Peddy applied were at the Senior Manager or Director level or were digital specialist roles or retail positions, all of which are considered lower in rank than Peddy's prior AVP positions at Matrix and LP. Def.'s 56.1 Stmt. ¶¶ 12, 133. L'Oréal asserts that "[g]enerally, Talent Acquisition does not consider hiring a former L'Oréal employee into a role which is lower in rank than the position the former employee held." *Id.* ¶ 134. Peddy disputes the accuracy of this assertion and points to two instances in which she alleges L'Oréal hired former VPs into lower-ranked AVP positions. Pl.'s 56.1 Stmt. ¶¶ 134, 248. L'Oréal maintains that one of those former VPs, Michelle Ryan, was not rehired as an AVP, but rather left for maternity leave, returned as a consultant for a year, and then transitioned into a fulltime position as an AVP. Def.'s 56.1 Reply ¶ 248. Yet even if L'Oréal has hired one or two employees into lower-level roles, such hiring decisions would not refute L'Oréal's general assertion that it does not do so as a matter of course. L'Oréal's preference for not rehiring former employees into lower level roles is entitled to deference. Moreover, L'Oréal provided rational, nondiscriminatory reasons for its selection of each applicant whom it hired for Senior Manager or Director-level roles. *See supra* Section I.F.

L'Oréal also provides legitimate, nondiscriminatory rationales for its selection of other

candidates for the AVP-level roles to which Peddy applied, including the Kiehl's Key Accounts role that was initially an AVP role but was later downgraded for budgetary reasons. *See supra* Sections I.E-F. When Ms. Diamond interviewed Peddy for the role, she determined that Peddy "had great experience and definitely seemed very smart, but she was truly a marketer." Goldberg Decl. Ex. 45. Even though Ms. Diamond thought Peddy "could do the job," she felt "the learning curve to this position would be quite steep," and thus ranked Peddy third after two other candidates. *Id.* After the position had already been downgraded to a Director-level position, Shannon Vandette applied. Def.'s 56.1 Stmt. ¶ 137; Pl.'s 56.1 Stmt. ¶ 264. Ms. Vandette, who was 27 years old, had previously worked for John Hardy in field sales and at Clinique as an account manager. Def.'s 56.1 Stmt. ¶ 137. Mr. Levetin states in his declaration, "We felt that [Ms. Vandette's] experience was directly relevant" to the position. Levetin Decl. ¶ 11. He also asserts that he believed that Ms. Vandette "would be a great fit for our team, but we did not feel that she was ready for a Director role, nor did we absolutely need a Director for this job," so he offered the position to her at a Manager level. *Id.* ¶ 12. He contends that "Ms. Peddy was ultimately not hired" for the role offered to Ms. Vandette, or a similar Key Accounts role offered to Renata Bruxel, "because there were better candidates for these particular positions based on our hiring philosophy." *Id.* ¶ 21. L'Oréal has thus offered sufficient evidence that its selection of other candidates for the Key Accounts roles was legitimate and nondiscriminatory, particularly in light of the fact that the roles were downgraded below the AVP level at which Peddy had previously worked.

L'Oréal similarly provides legitimate, nondiscriminatory reasons for selecting other applicants for two other AVP-level roles, the AVP or Retail Customer Experience and the AVP of Marketing with L'Oréal's Giorgio Armani Fragrance brand. Def.'s 56.1 Stmt. ¶¶ 132, 130.

The AVP or Retail Customer Experience role—for which over ninety-five applicants applied—required experience working across digital marketing and brick and mortar retail. *Id.* ¶ 132. L'Oréal determined that Megan Leisinger had a "unique skillset and would be especially suited for this position" in light of her prior experience as Brand Director for Nike, where she worked on apps, customer relationship management, communications, and brick and mortar event strategies. *Id.* L'Oréal determined that candidates with expertise in the luxury fragrance industry would be particularly well suited for the AVP of Marketing role with L'Oréal's Giorgio Armani Fragrance brand, for which over 200 candidates applied. *Id.* ¶ 130; Killeen Dep. 135:4-10. L'Oréal ultimately decided to hire Gwenola Gindre who "essentially spent her entire career in the luxury fragrance space" and had a "very attractive profile" for the position. Killeen Dep. 135:10-14. L'Oréal thus selected candidates for both of these AVP roles who had unique and directly relevant experience.

Finally, L'Oréal provides nondiscriminatory rationales for rejecting Peddy's applications for two Vice President roles. Ms. Ryan, Peddy's prior supervisor, testified that she did not think Peddy was qualified for a Vice President-level position because she needed to "show that [she] could run the business and manage the numbers and the execution, as well as the strategy." Ryan Dep. 25:17-25. In addition, L'Oréal contends that the candidate it hired as Vice President of Digital for the IT Cosmetics division had a strong digital and retail background from prior roles at Walmart and Amazon, and had also previously led e-commerce strategy in L'Oréal's CPD division. Def.'s 56.1 Stmt. ¶ 147. The candidate was thus uniquely qualified for the role. In addition, L'Oréal contends that no one was hired for the other VP role for which Peddy applied—VP of Global Marketing for Ralph Lauren—due to changes in the Ralph Lauren leadership team that caused the team to reevaluate the needs of the business. *Id.* ¶ 148.

L'Oréal has thus carried its burden of production by offering evidence that the candidate selected for each position to which Peddy applied was chosen for legitimate and nondiscriminatory reasons.

### C.  Pretext

In light of L'Oréal's evidence establishing legitimate, non-discriminatory reasons for its rejection of Peddy's applications for reemployment, the burden shifts back to Peddy to establish a triable issue as to whether L'Oréal's proffered reasons are pretextual.  In order to survive summary judgment, Peddy must raise sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence "'that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Gorzynski*, 596 F.3d at 106 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009)).  "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer['s] only consideration, but rather that the adverse employment action[] *would not have occurred without it.*" *Delaney*, 766 F.3d 163, 169 (2d Cir. 2014) (internal quotation marks and citations omitted).  "[W]here there is overwhelming evidence that the employer had a legitimate reason to [take an adverse action against] an employee, the employee must present more than [a] few isolated pieces of contrary evidence to survive summary judgment." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 125 (2d Cir. 2008) (citations omitted).

A plaintiff can demonstrate pretext by offering either direct or circumstantial evidence of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  As an initial matter, Peddy has not identified any direct evidence of age discrimination.  As described above, Peddy was asked at her deposition, "During the time that you worked at L'Oréal, from May 2015 to December 2016, did anybody make any

derogatory comments to you about your age?" Peddy Dep. 94:10-13 (Savage Decl. Ex. A).

Peddy responded that Candy Gebhart had done so, *id.* at 95:3, but when asked if she could

remember any specific comments that she considered derogatory on account of her age, Peddy

replied, "Not specifically, no," *id.* at 95:12-17.   When further asked whether there was "anybody

else other than Candy Gebhart," Peddy responded, "No." *Id.* at 95:18-22.   Indeed, Peddy does

not identify any discriminatory comments in her opposition brief or Rule 56.1 statement, whether

made to her, about her, or about the age of L'Oréal employees more generally.

   Accordingly, the Court considers whether Peddy has adduced sufficient circumstantial

evidence of age discrimination.   The strongest record evidence that supports an inference of age

discrimination is the fact that all ten of the individuals terminated in the November 2017 RIF

were over 40 years old.   Goldberg Decl. Ex. 16.   Again, however, Peddy is not arguing that

L'Oréal's decision to terminate her as part of the RIF was itself discriminatory.   And even if she

were, it is far from clear that she has raised a triable issue as to whether her termination was

discriminatory in light of the fact that 200 employees age 40 and older remained in the PPD

division following the RIF, 126 of whom were older than Peddy.   Def.'s 56.1 Stmt. ¶ 83.   The

Court thus focuses its pretext analysis only on whether a reasonable jury could conclude that

Peddy's age was the but-for cause of L'Oréal's rejection of her employment applications

following her November 2017 termination.

   The Court concludes that Peddy has failed to raise a genuine dispute of material fact as to

whether L'Oréal's proffered reason for rejecting her applications—its selection of better-

qualified candidates—was pretext for age discrimination.   Courts in this district have repeatedly

held that "the sheer number of failures to select a plaintiff for a job, without more, is [not]

enough to raise a genuine issue of fact on the issue of pretext." *Jimenez v. City of New York,* 605

32

F. Supp. 2d 485, 523 (S.D.N.Y. 2009) (collecting cases). "It would make no sense if a plaintiff could raise a genuine issue of fact *as to pretext* simply by applying to and being rejected for numerous jobs, without regard to whether his qualifications for each job were markedly superior to of others who were considered for each job." *Id.* at 524 (emphasis in original). Like in *Jimenez*, Peddy was qualified for some of the jobs to which she applied, while for others, she was "less qualified than the successful candidate." *Id.* (emphasis in original).

But Peddy fails to establish a triable issue of fact even for the positions for which she appears to meet L'Oréal's listed qualifications. As the *Jimenez* court stated:

> Unfortunately for plaintiff, employers enjoy 'unfettered discretion to choose among qualified candidates' and to decide which types of credentials are of the most importance for a particular job, and courts defer to employers to select what criteria are important to them when evaluating the issue of pretext. *Byrnie v. 525 Town of Cromwell Bd. of Ed.*, 243 F.3d 93, 103 (2d Cir. 2001). In order to survive a motion for summary judgment, an employee asserting that his employer's proffered explanation is a pretext for discrimination based on his supposedly stronger qualifications must demonstrate that his credentials are "so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the [employee] for the job in question." *Id.*

*Id.* at 524-525. Peddy has failed to establish that her credentials are "so superior" to the credentials of the individuals whom L'Oréal hired "that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected" over Peddy. *Id.* (quoting *Byrnie*, 243 F.3d at 103). "An employer has the right to decide how it will value the qualifications of different candidates." *Oluyomi v. Napolitano*, 811 F. Supp. 2d 926, 943 (S.D.N.Y. 2011) (citing *Scaria v. Rubin*, 117 F.3d 652, 654-55 (2d Cir. 1997)), *aff'd*, 481 Fed. App'x. 693 (2d Cir. 2012). L'Oréal exercised that right here, and Peddy has not raised a triable issue as to whether age discrimination was the "but for" cause of L'Oréal's rejection of her applications. Accordingly, L'Oréal is granted summary judgment on

Peddy's ADEA discrimination claim.

## II.   ADEA Retaliation Claim

Peddy also asserts that she was wrongfully terminated in retaliation for her internal complaints. Like her discrimination claim, Peddy's ADEA retaliation claim is governed by the burden-shifting framework set forth in *McDonnell Douglas*. *See Gorzynski*, 596 F.3d at 110. Pursuant to that framework, in order to establish a prima facie case of retaliation in response to a motion for summary judgment, "a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find (1) that [s]he engaged in protected participation or opposition under . . . the ADEA[], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 205 (2d Cir. 2006) (internal quotation marks and citations omitted); *see also Kopchik v. Town of E. Fishkill*, 759 F. App'x 31, 34–35 (2d Cir. 2018).

### A.   Plaintiff's *Prima Facie* Case

#### 1.   Plaintiff's Protected Activity

In her Complaint, Peddy alleged that she filled out a questionnaire on February 22, 2016 "wherein she mentioned that L'Oreal [sic] created a hostile work environment for older employees," and that in a September 13, 2017 questionnaire, she "reiterated her message that she felt the company was not supportive of older people in that they denied older employees the same opportunity to advance as they allowed younger employees to advance." Compl. ¶¶ 11, 28. However, when Peddy was asked during her deposition where in her 2016 survey she mentioned a hostile work environment for older employees, she acknowledged that she did not "mention the word 'age'" or "use those words" in the survey. Peddy Dep. 107:10-18; 109:11-15; 112:6-21

(Savage Decl. Ex. AA).  Moreover, when L'Oréal ask Peddy to identify where in the 2017

questionnaire she had reiterated her message about L'Oréal's lack of support for older

employees, she identified the following:

> Career advancement opportunities. To have a career you want to advance in the
> organization, and know that you can work towards a promotion and get it. There
> does not seem to be a fair process in place for this. You don't know about
> opportunities, or have a fair chance to be considered across divisions. They are not
> all posted. It seems to be based on who you know only. At each level, the required
> experience also widely varies which doesn't seem fair. Decision making and
> empowerment shouldn't be about cutting out layers which is often the senior
> people, to hire junior people. It should be about having the right balance to
> efficiently grow the business both strategically in an innovative way, and getting
> things done. Too many people are reporting into 1 senior individual at the moment
> and it's not effective. This concern needs to be better looked at from all angles, and
> levels of input

Def.'s 56.1 Stmt. ¶ 95.

Peddy appears to concede that her questionnaires do not constitute protected activity, as

she states in her opposition brief that her "retaliation claims are based on her age discrimination

complaint to senior management including Rozé in June 2016." Pl.'s Opp. at 35 n.16.

Moreover, at oral argument, Peddy's attorney reiterated that "the protected activity is [Peddy's]

June 2016 letter," not the questionnaires.  June 19, 2020 Tr. at 28:14-29:8.  In any event, the

Court finds that the questionnaires plainly do not allege age discrimination and thus do not

constitute protected activity.  "[M]aking an internal complaint of discrimination is 'protected

activity' when the employee can show a 'good faith, reasonable belief that the underlying

challenged actions of the employer violated the law.'"  *Murphy v. City of Newburgh*, 785 F.

App'x. 900, 902 (2d Cir. 2019) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d

Cir. 2001)).  "And not just any law—the plaintiff is 'required to have had a good faith,

reasonable belief that [she] was opposing an employment practice made unlawful by [the

ADEA].'"  *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14

(2d Cir. 2013) (quoting *McMenemy*, 241 F.3d at 285 (2d Cir.2001)). "A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Kelly*, 716 F.3d at 15. As the factual record does not support an inference that L'Oréal could have understood Peddy's questionnaire responses as age discrimination complaints, the questionnaires do not constitute protected activity.

By contrast, Peddy's June 1, 2016 email explicitly stated that she "fe[lt]" her "age and gender had something to do with this." Savage Decl. Ex. N. In light of Peddy's explicit reference to her age, a reasonable juror could conclude that Plaintiff's June 1, 2016 email constituted protected activity.

## 2. Defendant's Awareness of Plaintiff's Protected Activity

L'Oréal argues that there is no evidence that any of the individuals involved in Peddy's November 2017 termination were aware of her June 1, 2016 email at the time they decided to terminate her. *See* Def. MSJ at 21 ("In fact, Mr. Greenberg [and] Mr. Martinez-Rumbo, the decision-makers for the 2017 RIF, had not been hired into PPD and/or had not met Plaintiff until 2017."). "However, for purposes of a prima facie case, a plaintiff may rely on general corporate knowledge of her protected activity to establish the knowledge prong of the prima facie case." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) ("[N]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."). As Plaintiff sent her June 2016 complaint to Sarah Hibberson, L'Oréal's Senior Vice President for HR, and copied Emanuel Lulin, L'Oréal's Head of Ethics, and Fredric Rozé, L'Oréal's CEO, she has established "general corporate knowledge" and meets the second prong of her prima facie case.

36

### 3.  Materially Adverse Actions

To establish a materially adverse action, a plaintiff must show that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). Even though Peddy was rehired after her initial termination, she was terminated for a second time and her subsequent applications for reemployment were rejected. She thus establishes the third element of her prima face case.

### 4.  Causation

A plaintiff may establish the requisite causal connection either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

L'Oréal argues that Peddy cannot establish a causal connection between her protected activity and either her termination or L'Oréal's refusal to rehire her. The Court agrees. Nearly a year and a half elapsed between Peddy's June 1, 2016 email and her November 14, 2017 termination, and she was rehired between the writing of her email and her second termination. "While the Second Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected, it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together." *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F.Supp.3d 396, 412 (S.D.N.Y.2014) (citation and internal quotation marks omitted) (citing cases). "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the

adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) (collecting cases). Peddy argues that L'Oréal "conveniently waited until [it] was reviewing its budget to take its discriminatory action" in order to have a valid explanation for its actions. Pl.'s Opp. at 36. Yet Peddy's claim that L'Oréal was merely waiting "for an opportune time to exact their retaliation," *id.*, is entirely speculative and unsupported by the factual record. Accordingly, the Court holds that no reasonable juror could find that Peddy established causation through temporal proximity.

Nor has Peddy identified any other evidence of retaliatory animus to support an inference of causation. Peddy argues that a jury may infer a causal relationship because Brittingham, VP for PPD's HR team, discussed Peddy's termination with Rozé. *Id.* at 37. Brittingham testified at his deposition, "I wanted Frédéric to be aware that, as part of the RIF, Christine's position had been impacted so that in the event that she were to reach out again, he would be aware and to make sure that he was in line with our decision to move forward." Brittingham Dep. 121:23-122:5. No reasonable juror would conclude that L'Oréal was engaging in unlawful retaliation simply because Brittingham wanted to verify that Rozé was "aware of" and "in line with" the decision to terminate Peddy. Instead, Brittingham's discussion with Rozé suggests that HR was acting even more cautiously than usual to ensure that Peddy's termination was well-considered and legitimate.

Accordingly, the Court concludes that Plaintiff has failed to establish causation, one of the four elements of her *prima facie* case, and L'Oréal is granted summary judgment on the ADEA retaliation claims.

### III.   NYSHRL and NYCHRL Claims

Because the Court dismisses the ADEA claims in this action, it declines to exercise supplemental jurisdiction over Plaintiff's state and municipal claims. Federal district courts have

supplemental jurisdiction over non-federal law claims "that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article

III of the United States Constitution." 28 U.S.C. § 1367(a).  A district court "may decline to

exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it

has original jurisdiction." *Id.* § 1367(c)(3).  "[I]n the usual case in which all federal-law claims

are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n.7 (1988).  Courts in this district have declined to exercise supplemental

jurisdiction over NYSHRL and NYCHRL claims after granting defendants' motions for

summary judgment on ADEA claims where, as here, the "extensive discovery already taken is

likely sufficient to enable [the NYSHRL and NYCHRL] claims to be evaluated in state court

without any additional discovery." *Nixon*, 2019 WL 1428348 at *12 (quoting *Vuona v. Merrill

Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 394 (S.D.N.Y. 2013)); *see also Espinoza v. New York

City Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) ("Courts in this District

routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after

dismissing all federal claims.").  Accordingly, the Court declines to exercise supplemental

jurisdiction over Peddy's NYSHRL and NYCHRL claims and thus dismisses those claims

without prejudice.

**CONCLUSION**

For the foregoing reasons, the Court grants L'Oréal's motion for summary judgment.

Although the Court is sympathetic to Peddy's plight, she has not established that her termination

was the result of unlawful age discrimination or retaliation.   The Clerk of Court is thus

respectfully directed to terminate the motion at Docket Entry 66 and close this case.

SO ORDERED.

Dated:     July 15, 2020
           New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/15/2020

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

CHRISTINE PEDDY,

                Plaintiff,

       -against-

L'OREAL USA, INC.,

                Defendant.

--------------------------------------------------------X

18 **CIVIL** 7499 (RA)

## JUDGMENT

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion and Order dated July 15, 2020, L'Oreal's motion for summary

judgment is granted. Although the Court is sympathetic to Peddy's plight, she has not established

that her termination was the result of unlawful age discrimination or retaliation; accordingly, the

case is closed.

**Dated:** New York, New York
       July 15, 2020


                                 **RUBY J. KRAJICK**

                                 Clerk of Court

          **BY:**

                                   **Deputy Clerk**

# EXHIBIT B

AO 133    (Rev. 12/09)   Bill of Costs

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| CHRISTINE PEDDY | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-cv-07499-RA-JLC |
| L'ORÉAL USA, INC. | ) | |
| | ) | |

## BILL OF COSTS

Judgment having been entered in the above entitled action on ___07/15/2020___ against ___Plaintiff Christine Peddy___ ,
                                                                                    *Date*

the Clerk is requested to tax the following as costs:

| | |
|---|---|
| Fees of the Clerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ |
| Fees for service of summons and subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2,646.50 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . . . . | 11,901.24 |
| Fees and disbursements for printing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,269.08 |
| Fees for witnesses *(itemize on page two)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Docket fees under 28 U.S.C. 1923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Costs as shown on Mandate of Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of court-appointed experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 . . . . . | |
| Other costs *(please itemize)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| TOTAL   $ | 18,816.82 |

*SPECIAL NOTE:* Attach to your bill an itemization and documentation for requested costs in all categories.

### Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

| | |
|---|---|
| ☑  Electronic service | ☐  First class mail, postage prepaid |
| ☐  Other: | |

s/ Attorney:    ___s/ Eric A. Savage___

Name of Attorney: ___Eric A. Savage___

For: ___L'Oréal USA, Inc.___          Date: ___06/10/2021___
         *Name of Claiming Party*

### Taxation of Costs

Costs are taxed in the amount of _____ and included in the judgment.

_____        By: _____        _____
*Clerk of Court*                        *Deputy Clerk*                              *Date*

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   ECF CASE

CHRISTINE PEDDY,

                          Plaintiff,                  18 CV 7499 (RA)(JLC)

     v.

L'ORÉAL USA INC.

                          Defendant.
-------------------------------------------------------------------X

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S MOTION FOR COSTS**

Law Offices of Lauren Goldberg, PLLC
Attorney for Plaintiff
Lauren Goldberg
3 Columbus Circle, 15th Floor
New York, New York 10019
(646) 452-8

## Preliminary Statement

Plaintiff Christine Peddy submits these objections pursuant to Local Civil Rule 54.1 (b). Plaintiff opposes Defendant's motion for costs following this Court's summary judgment ruling on Plaintiff's federal law claims.  By and through counsel, Plaintiff respectfully requests that this Honorable Court exercise its discretion under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920 and deny Defendant's Bill of Costs.

Should the Court be inclined to tax the Plaintiff, many of the costs requested by the Defendant do not qualify as "costs" under the Local Rules of this Court.  Local Rule 54.1 "outlines those costs which are taxable in the Southern District of New York" and many of the items requested by Defendant are not permitted.  *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D 67, *70 (S.D.N.Y. 2015).  Defendant's costs fall into 3 categories: deposition and transcript costs, printing costs, and subpoena-related costs.  For the reasons cited below, many of these costs should not be classified as "taxable costs" under the local rules.

## Deposition and Transcript Costs

Defendant seeks $ 11, 901.24 in deposition costs.  See Def.'s Exh. B (Bill of Costs). In regard to depositions, Local Rule 54.1 (c)(2) states that only "the original transcript of a deposition, plus one copy, is taxable....if they were used by the Court in ruling on a motion for summary judgment....Costs for depositions taken solely for discovery are not taxable." Accordingly incidental deposition-related costs should not be allowed.  *See Williams v. Cablevision Sys. Corp.* 2000 U.S. Dist. LEXIS 6475, *7 (S.D.N.Y. 2000)  (holding that "[c]ourts have construed [Local Rule 54.1(c)(2)] to exclude from taxable costs reporter's fees

and delivery charges associated with deposition transcripts" and reducing costs accordingly); *Yin v. Japan Soc'y, Inc.*, 2000 U.S. Dist. LEXIS 8828, *7 (S.D.N.Y. 2000) (noting that the Local Rule "limits recoverable costs to "the original transcript of a deposition, plus one copy" and subcontracting "Appearance Fees" and "Delivery Fees" from taxable costs); *Mobasher v. Bronx Comty. College*, 2008 U.S. Dist. LEXIS 57470, *9-10 (S.D.N.Y. 2008)("We agree with plaintiff; not only is the cost unnecessary, but shipping fees are not provided for under Local Civil Rule 54.1"); *See also Faberware Licensing Co. LLC v. Meyer Mktg.Co.*, Ltd., 2009 U.S. Dist. LEXIS 121323 at *16-17 (S.D.N.Y. Dec. 30, 2009), aff'd, 428 Fed Appx.n 97 (2d Cir. 2011)(recognizing that expedited drafts and rough drafts are generally not taxed).

Accordingly, the charges associated with the depositions aside from the original and one copy, should not be permitted.[1] Defendant should also be denied the total cost of Michelle Ryan's deposition transcript as it does not appear to be cited. See Def's Exh C. – (Invoice for the deposition of Michelle Ryan-totaling $ 612.50). Additionally, Defendant should not be permitted to include the costs for videoing Plaintiff's two- day deposition. See Exh C (Videoing Invoices for $ $1048.75 + $ 1038.47). Defendant did not use the videos of the Plaintiff in its summary judgment motion and the local rules do not contemplate such an item in the taxable list of costs. If one eliminates all the extra charges from the deposition invoices aside from the original plus one copy and eliminates the videoing invoices and Michelle Ryan's deposition transcript, the amount is reduced from $ 11, 901.24 to $6, 501. See Exh C Invoices. However, as Plaintiff provided Defendant with a copy of the transcript for every deposition that she conducted (transcripts for Mercedes, Hrudowsky, Bacallao, Brittingham, Ryan, Killeen, Fennell,

---

[1] If one eliminates all the extra costs from the depositions transcript invoices, the amounts are as follows: Christine Peddy (July 24): $ 1572.25, Christine Peddy (October 29): $508.25; F. Mercedes: $1204.50, S. Hrudowsky: $517.50, M. Bacallao- $630.00, S. Brittingham: $847.00; S. Killeen- $661.50, M. Fennell: $315.00, C. Realson: $245.00. Exh C. These amounts total $ 6501.00.

Realson) these costs should be further reduced by at least 50% which reduces the amount by $2210.25. Accordingly, if you subtract $ 6501- $2210.25, the maximum amount owed would be $4290.75.

## Document Production Costs

Defendant seeks $1040 as taxable costs for "document production and preparing copies of Exhibits." Def.'s Exh D; Savage Dec. ¶ 5b. These costs should not be permitted. Defendant included invoices of expenses "relating to the electronic storage and transmittal of document productions." *Id.* Local Rule 54.1 (e) states that a copy of an exhibit is taxable if the original was not available and the copy was used or received in evidence. Defendant did not provide any hard copies for its summary judgment motion as all courtesy copies were prohibited during the covid pandemic. Accordingly, the cost for "document production" should not be allowed as "the cost of copies used for the convenience of counsel or the Court are not taxable." Local Rule 541.1 (c)(5).

## Subpoena-Related Costs

Plaintiff seeks $ 2646.50 in subpoena related expenses. See Def. Exh. E. None of these expenses should be permitted. First, in regard to Revlon, Calvin Klein, and Estee Lauder- these were Plaintiff's prior places of employment. Defendant initially sent out subpoenas to Plaintiff's prior places of employment without providing notice. Plaintiff contested Defendant's use of such subpoenas and ultimately, Judge Cott squashed Defendant's use of such subpoenas. See Docket Document No. 34. Local 54.1 does not permit Defendant to now seek costs for impermissible subpoenas. Accordingly, the costs for wrongly subpoenaing Revlon ($640),

Calvin Klein ($560) and Este Lauder ($360) should be prohibited.[2] Defendant also seeks costs related to subpoenaing Sharon DeJesus for her deposition.  However, Defendant did not use Sharon DeJesus' deposition transcript in its summary judgment motion, nor was it cited in the decision.  Defendant is not entitled to payment for its costs in taking her deposition as her deposition was not "necessarily obtained for use in this case" as required by 28 U.S.C.  § 1920. Local Rule 54.1 (c)(2) reads:  "Costs for depositions taken solely for discovery are not taxable."

**CONCLUSION**

For the foregoing reasons, Defendant's motion for costs should be denied.

Dated:  June 24, 2021
        New York, New York

LAW OFFICES OF LAUREN GOLDBERG, PLLC

By_____/s/_____
            Lauren Goldberg (LG:9890)
            Attorney for Plaintiff

---

[2] While there is no basis for these subpoenas costs, the actual price for the service of subpoenas is also exorbitant.